2019 PA Super 62

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRIAN D. TANNER | : | |
| | : | |
| Appellant | : | No. 211 WDA 2018 |

Appeal from the PCRA Order January 23, 2018
In the Court of Common Pleas of Lawrence County Criminal Division at
No(s):  CP-37-CR-0000060-2015,

BEFORE:  PANELLA, J., LAZARUS, J., and MURRAY, J.

OPINION BY MURRAY, J.:                    FILED FEBRUARY 27, 2019

Brian D. Tanner (Appellant) appeals from the order denying his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  After careful review, we affirm in part, and reverse and vacate in part.

In January 2015, Appellant, the former secretary-treasurer of Shenango Township (Township), Lawrence County, was charged with dealing with proceeds of unlawful activities, conspiracy to commit dealing with proceeds of unlawful activities, forgery, corrupt organizations, access device fraud, and theft by unlawful taking or disposition.  The charges arose from Appellant's alleged receipt of unauthorized compensation in the amount of $650,000, in addition to his W-2 salary, as well as his alleged unauthorized credit card purchases using the Township's credit card.  Prior to trial, Appellant filed a motion for change of venue, claiming that because of the immense media coverage, he would be denied a fair and impartial trial in Lawrence County.

After a hearing held on July 9, 2015,[1] the court denied Appellant's motion without prejudice.

The case proceeded to trial, and following direct examination of the Commonwealth's third witness, affiant Lawrence County Detective Vincent Martwinski, Appellant decided to enter a negotiated guilty plea to seven counts of forgery,[2] three counts of theft by unlawful taking or disposition,[3] and two counts of access device fraud.[4] On April 6, 2016, the Honorable Dominick Motto, sitting as the trial court, accepted the Commonwealth's recommendation, and imposed a sentence of 2½ to 5 years of incarceration, five years of probation, and $449,000 in restitution ($330,000 to be paid to Shenango Township and $119,000 to be paid to Selective Insurance Company, the Township's bonding company).

Appellant neither filed post-sentence motions nor a direct appeal. On April 12, 2017, Appellant filed a timely pro se PCRA petition; counsel was appointed and filed an amended petition. On September 26, 2017, the trial court held an evidentiary hearing, and on November 1, 2017, held oral argument on the petition. On January 23, 2018, the PCRA court denied

_____

[1] At the hearing, the trial court accepted exhibits of newspaper articles (which are included in the certified record on appeal) and ordered the parties to submit briefs in advance of the court's disposition.

[2] 18 Pa.C.S.A. § 4101.

[3] 18 Pa.C.S.A. § 3921.

[4] 18 Pa.C.S.A. § 4106.

Appellant's petition. Appellant filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

Appellant presents the following issues for our consideration:

(1)     Did the PCRA [c]ourt commit error in denying Appellant relief in the form of a new trial on the basis of ineffective assistance of trial/guilty plea counsel, which as a result of puffery, lack of investigation/preparation, and competent strategy, induced him to enter a guilty plea [with substantial restitution component] to a crime he did not commit?

(2)     Did the PCRA [c]ourt commit error in denying Appellant relief in the form of a new trial on the basis of ineffective assistance of trial/guilty plea counsel, as a result of the failure to appeal the denial of transfer of venue or to request a change of venire?

(3)     Did the PCRA [c]ourt commit error in denying Appellant relief in the form of a new trial on the basis of ineffective assistance of trial/guilty plea counsel, as a result of failure to pursue dismissal on the basis of selective prosecution?

(4)     Is the restitution component of Appellant's [s]entence in the amount of $330,000 to Shenango Township illegal and does his sentence have to be vacated as a matter of law as a result?

Appellant's Amended[5] Brief at 4.

The standard of review of an order denying a PCRA petition is whether the PCRA court's determination is supported by the record and free of legal error. Commonwealth v. Fears, 86 A.3d 795, 803 (Pa. 2014) (quotations

_____

[5] On June 15, 2018, this Court granted Appellant's motion to amend his appellate brief to include an illegality of sentence issue as it related to the restitution portion of his sentence. See Order, 6/15/18.

- 3 -

and citations omitted). "To be entitled to PCRA relief, [an] appellant must establish, by a preponderance of the evidence, [that his] conviction or sentence resulted from one or more of the enumerated errors in 42 Pa.C.S.A. § 9543(a)(2)[.]" Id.

In his first issue, Appellant contends that the PCRA court erred in failing to grant him a new trial, where counsel was ineffective for: inducing him to plead guilty; failing to prepare him and witnesses for trial; never hiring investigators or reviewing the video/audio recordings of the Commonwealth's potential witnesses; and advising him that his wife's arrest was imminent if he did not plead guilty. Appellant claims that he "was ready and willing to prove his innocence at trial through cross-examination, third-party witnesses, documents, and his own testimony, but was thwarted by his own counsel's failure to adequately investigate and prepare for his trial and/or to properly advise/strategize with him pre-trial." Appellant's Amended Brief at 27. Succinctly stated, Appellant asserts that "counsel's lack of investigation, preparation and coherent strategy clearly led to [his] abrupt guilty plea, mid-trial." Id. at 29. After careful review of the parties' briefs, the relevant case law and the certified record, we agree with the PCRA court's determination that counsel was not ineffective for the above-enumerated reasons. We rely upon the opinion, authored by Judge Motto, in affirming the denial of post-conviction relief on these ineffectiveness of counsel issues. See PCRA Court Opinion, 1/23/18, at 29-33 (counsel properly prepared for trial where he met with Appellant on several occasions to review discovery, counsel explained

- 4 -

discovery to Appellant, provided Appellant with opportunity to review discovery on his own, counsel spoke with former Shenango Township Supervisor and Appellant's father-in-law, counsel formulated defense after conversing with Appellant, counsel spoke with Appellant during all trial recesses, including lunch time, to discuss aspects of trial; counsel's failure to subpoena witnesses would not have prevented them from testifying at trial where counsel had spoken with those witnesses and they were willing to testify on Appellant's behalf if necessary; Appellant's father-in-law had been issued a subpoena by the Commonwealth which ensured his attendance; counsel had sufficient time to issue other subpoenas if necessary for trial; and other witnesses counsel wished to call were on Commonwealth's list and would be available for trial); id. at 42-45 (Appellant signed written guilty plea acknowledging he understood nature of charges, including elements of offenses, was aware of maximum legal sentence, understood right to jury trial, knew that Commonwealth's sentencing recommendation was not binding upon court, Appellant confirmed he entered guilty plea of own free will and without coercion, had opportunity to review written colloquy with counsel, and Appellant acknowledged it had been adequately explained to him and he was satisfied with counsel's representation; Appellant's on-the-record colloquy, during which he never voiced an objection, indicated he understood the nature of charges and admitted to factual bases for charges, was aware of right to jury trial and presumption of innocence, was advised of permissible sentence ranges, knew court not bound by sentence recommendation, was satisfied

with counsel's representation and that counsel had addressed any questions he had).

In his next issue, Appellant contends that counsel was ineffective for failing to appeal the court's decision to deny, without prejudice, his request to transfer venue due to negative pre-trial publicity, or to request a change of venire.

We first note that the mere existence of pre-trial publicity does not warrant a presumption of prejudice. Commonwealth v. Chambers, 685 A.2d 96, 103 (Pa. 1996). "Our inquiry must focus upon whether any juror formed a fixed opinion of the defendant's guilt or innocence as a result of the pre-trial publicity." Commonwealth v. Marinelli, 690 A.2d 203, 213 (Pa. 1997) (quotation omitted). Normally, what prospective jurors tell us about their ability to be impartial will be a reliable guide to whether the publicity is still so fresh in their minds that it has removed their ability to be objective. Commonwealth v. Briggs, 12 A.3d 291, 314 (Pa. 2011). The discretion of the trial judge is given wide latitude in this area. Id.

For pre-trial publicity to be presumptively prejudicial, a defendant must prove, inter alia, "that the publicity [was] so extensive, sustained, and pervasive without sufficient time between publication and trial for the prejudice to dissipate, that the community must be deemed to have been saturated." Commonwealth v. Rucci, 670 A.2d 1129, 1141 (Pa. 1996). The publicity must be so inflammatory and slanted toward conviction "rather than factual and objective." Marinelli, 690 A.2d at 213 (quotation omitted).

"Finally, even if there has been inherently prejudicial publicity which has saturated the community, no change of venue is warranted if the passage of time has sufficiently dissipated the prejudicial effects of the publicity." Chambers, 685 A.2d at 103.

With regard to the denial of Appellant's pre-trial motion to change venue, we note that the trial court's denial was entered without prejudice with a right to re-file in the event that the selection of the jury revealed a difficulty or impossibility to seat a fair and impartial jury. Thus, whether counsel was ineffective for failing to file an interlocutory appeal of the denial of Appellant's motion must be viewed in light of the entire procedural backdrop of the case - namely, the fact that the court left open the option for Appellant to re-file his motion if an impartial jury became an impossibility at the time of voir dire.

Appellant specifically alleges that the pre-trial publicity in the local Lawrence County newspaper and on local television stations was "extensive and adverse." Appellant's Amended Brief at 35. He claims that "[i]t would appear that [it] would have been a competent and effective strategy" to appeal the denial of his motion to change venire and that counsel was ineffective for failing to do so. Id. However, Appellant qualifies this statement with the claim that the additional time he would have gained from an appeal would have allowed counsel to better prepare him for trial and to gain a better understanding of issues surrounding the prosecution of Appellant's potential co-defendant, the Township's auditor, Deno Delorenzo. Such assertions, however, fall short of establishing the pervasiveness and sustained negative

publicity required to change or transfer venue of a case.  Rucci, 670 A.2d at 1141.

Having viewed the newspaper articles attached to his motion to transfer venue, we cannot say that they contained information that actually prejudiced Appellant or that they were so presumptively prejudicial that he could not have received a fair trial.  See Commonwealth v. Casper, 392 A.2d 287 (Pa. 1978) (to determine whether publicity precludes fair trial, courts look to whether pre-trial publicity was factual and objective or if it consisted of sensational, inflammatory and slanted articles).  The local articles contained factual accounts of circumstances surrounding the investigation into Appellant's alleged criminal dealings.  Appellant states in his brief that due to the newspaper coverage the jury "could not have had a positive viewpoint of [Appellant]."  Appellant's Amended Brief at 37.

Again, this assertion does not fulfill Appellant's burden of proving that a change of venue was required as a result of "extensive, sustained, and pervasive" pretrial publicity.  First, eleven months passed from the time of the latest article (dated March 2015) until Appellant's trial in February 2016.  See Commonwealth v. Walter, 119 A.3d 255 (Pa. 2015) (change of venue properly denied where 11-month period between last publicity and trial was sufficient to dispel prejudice; even where inflammatory or inculpatory publicity is disseminated in sustained fashion and pervasively throughout community, where that publicity is followed by "cooling off" period sufficient to dissipate prejudicial effect, change of venue is unnecessary).  Second, the court asked

each potential juror whether he or she was aware of the case as a result of pre-trial publicity and, if so, whether that publicity would cloud his or her judgment in rendering a fair and impartial verdict in the case. Of the potential jurors that had been exposed to the pre-trial publicity in the case, only two stated that he or she could not be completely objective. As a result, they were struck for cause. See N.T., 2/16/16, at 144; N.T., 2/17/16, at 57. Moreover, in an abundance of caution, the court struck a third juror for cause, even though he indicated he could be fair and unbiased, because he had had conversations about the case with potential trial witnesses. See N.T., 2/16/16, at 103.

Looking at the entire record, we cannot say that counsel was ineffective for failing to file an interlocutory appeal where the question of the jury's impartiality had not yet been determined, and there remained a possibility of Appellant re-filing a motion to change venue. See Trial Court Order, 9/4/15, at 1 (court noted that although pre-trial publicity was extensive in case, it has been objective and related generally to progress of case through court system procedurally or involving issues brought before Township Board of Supervisors only collaterally related to charges in case). We also find that counsel was not ineffective for failing to file a motion for change of venire where the court determined that the impaneled jury could be fair and impartial, after conducting an extensive and thorough voir dire process and striking for cause those jurors who had been exposed to pre-trial publicity and could not be

objective and impartial.   See 42 Pa.C.S.A. § 8702 (impaneling jury from another county).

Next, Appellant asserts that counsel was ineffective for failing to move to dismiss the case on the basis of selective prosecution.   At trial, Appellant's defense rested largely on his claim that the unauthorized payments had been approved by Delorenzo and that he had trusted Delorenzo to report the correct 1099 disclosures for compensation purposes.   Appellant also contends that the Township Sewer Secretary, Mary Gay, was paying herself above and beyond her salary and was not prosecuted.

In Commonwealth v. Murphy, 795 A.2d 997 (Pa. Super. 2002), we explained that to establish a prima facie case of selective prosecution:

> a defendant must establish, first, that others similarly situated were not prosecuted for similar conduct, and, second, that the Commonwealth's discriminatory prosecutorial selection was based on impermissible grounds such as race, religion, the exercise of some constitutional right, or any other such arbitrary classification.  The burden is on the defense to establish the claim; it is error to shift the burden to the prosecution to establish or refute the claim.  Because of the doctrine of separation of powers, the courts will not lightly interfere with an executive's decision of whom to prosecute.

Id. at 1000 (emphasis added).

We agree with the PCRA court that the evidence at trial was insufficient to establish a claim of selective prosecution where neither Delorenzo nor Gay had the authority to write themselves checks or had access to signature stamps to do so.  Moreover, Appellant did not show how the Commonwealth's prosecution was based on impermissible grounds such as race, religion or

some other arbitrary classification. In fact, evidence was introduced that the impermissible Township payments were discovered by an independent state agency (the Pennsylvania Auditor General) and there did not appear to be a political or improper motive in alleging the criminal activity. Finally, Appellant was aware that his cooperation would be necessary to prosecute Delorenzo; by failing to accept his own responsibility for the criminal activity, Appellant prevented the Commonwealth from proceeding on any criminal prosecution of Delorenzo. Under such circumstances, Appellant's claim lacks merit.

In his fourth and final issue, Appellant asserts that "the restitution portion of his sentence to Shenango Township in the amount of $330,000 is illegal and must be vacated" because the Township is not a "victim" under our Commonwealth's restitution statute, 18 Pa.C.S.A. § 1106(a).[6] Appellant's Amended Brief at 42. Appellant cites the Pennsylvania Supreme Court's decision in Commonwealth v. Veon, 150 A.3d 435 (Pa. 2016), which held that a restitution order directing payment to a Commonwealth agency as the "victim" of a crime under Section 1106 was illegal because the Commonwealth was not a victim as that term is used in Section 1106 of the Crimes Code, nor had it directly or indirectly reimbursed a victim as defined by Section 11.103 of the Crime Victims Act.

_____

[6] Although Appellant did not raise this issue before the PCRA court, legality of sentence issues are always subject to review if the PCRA petition is timely filed. Commonwealth v. Fahy, 737 A.2d 214, 223 (Pa. 1999).

- 11 -

The statute governing restitution for injuries to person or property, 18 Pa.C.S.A. § 1106, provides in relevant part:

(a) General rule.--Upon conviction for any crime wherein property has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime, or wherein the victim suffered personal injury directly resulting from the crime, the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor.

\* \* \*

(c) Mandatory restitution.--

(1) The court shall order full restitution:

(i) Regardless of the current financial resources of the defendant, so as to provide the victim with the fullest compensation for the loss. The court shall not reduce a restitution award by any amount that the victim has received from the Crime Victim's Compensation Board or other governmental agency but shall order the defendant to pay any restitution ordered for loss previously compensated by the board to the Crime Victim's Compensation Fund or other designated account when the claim involves a government agency in addition to or in place of the board. The court shall not reduce a restitution award by any amount that the victim has received from an insurance company but shall order the defendant to pay any restitution ordered for loss previously compensated by an insurance company to the insurance company.

(ii) If restitution to more than one person is set at the same time, the court shall set priorities of payment. However, when establishing priorities, the court shall order payment in the following order:

(A) The victim.

> (B) The Crime Victim's Compensation Board.
>
> (C) Any other government agency which has provided reimbursement to the victim as a result of the defendant's criminal conduct.
>
> (D) Any insurance company which has provided reimbursement to the victim as a result of the defendant's criminal conduct.

18 Pa.C.S.A. § 1106(a) & (c). Victim is defined under Section 1106 as:

> "Victim." As defined in section 479.1 of the act of April 9, 1929 (P.L.177, No.175), known as The Administrative Code of 1929. The term includes the Crime Victim's Compensation Fund if compensation has been paid by the Crime Victim's Compensation Fund to the victim and any insurance company that has compensated the victim for loss under an insurance contract.

18 Pa.C.S.A. § 1106(h) (defining "victim") (repealed Oct. 24, 2018, P.L. 891,

No. 145, § 1, effective Jan. 31, 2005).[7]

> Likewise, the Crime Victims Act, 18 P.S. § 11.103, defines "victim":
>
> (1) A direct victim
>
> (2) A parent of legal guardian of a child who is a direct victim, except when the parent or legal guardian of the child is the alleged offender.

_____

[7] Because the events that led to Appellant's conviction occurred before October 24, 2018, this version of the statute applies. Section 1106(h) was subsequently updated and now defines "victim":

> As defined in section 103 of the act of November 24, 1998 (P.L. 882, No. 111), known as the Crime Victims Act. The term includes an affected government agency, the Crime Victim's Compensation Fund, if compensation has been paid by the Crime Victim's Compensation Fund to the victim, any insurance company that has compensated the victim for loss under an insurance contract and any business entity.

18 Pa.C.S.A. § 1106(h) (footnote omitted).

(3)   A minor child who is a material witness to any of the following crimes and offenses under 18 Pa.C.S. (relating to crimes and offenses) committed or attempted against a member of the child's family. . .

(4)   A family member of a homicide victim, including stepbrothers or stepsisters, stepchildren, stepparents or a fiance, one of   whom is to be identified to receive communication as provided for in this act, except where the family member is the alleged offender.

18 P.S. § 11.103 (1)-(4).   "Direct victim" is defined in Section 11.103, in pertinent part, as:

An individual against whom a crime has been committed or attempted and who as a direct result of the criminal act or attempt suffers physical or mental injury, death or the loss of earnings under this act. The term shall not include the alleged offender.

Id. (emphasis added).

Appellant asserts that his restitution sentence payable to Shenango Township is illegal based on the Pennsylvania Supreme Court's holding in Commonwealth v. Veon, 150 A.3d 435 (Pa. 2016).  In Veon, the appellant was a member of the Pennsylvania House of Representatives and used money he was entitled to in his capacity as a Representative to fund his non-profit corporation.  A jury convicted appellant of theft by unlawful taking, theft by failure to make required disposition of funds received, and misapplication of entrusted property and property of government or financial institutions.  Id. at 451.  The trial court sentenced appellant to incarceration, intermediate punishment, and restitution to the Pennsylvania Department of Community and Economic Development (DCED).  On appeal, this Court affirmed the

judgment of sentence in part, upheld the restitution as to certain counts, and vacated as to others. See Commonwealth v. Veon, 109 A.3d 754 (Pa. Super. 2015).

Mr. Veon filed a timely petition for allowance of appeal to the Pennsylvania Supreme Court, which the Supreme Court granted on August 20, 2015. In addressing Mr. Veon's challenge to his sentence of restitution, the Court explained:

> Notwithstanding any legislative expansion of the definition of "victim," it is clear that the plain text of Section 11.103 still envisages "victims" as "persons" commonly understood. A "victim" under Section 11.103 must be "a direct victim," i.e., an "individual who has suffered injury, death, or loss of earnings; or a "child," "parent," "guardian," or "family member." Every relevant noun unequivocally describes a human being, not a government agency, and nowhere else is there a relevant definition that persuades us to broaden the common understanding of these words. There can be no serious doubt that DCED, the agency designated to receive the restitution ordered in this case, does not qualify as a direct victim. And neither, of course, is DCED a parent, guardian, child or family member of a homicide victim. Although Subsection 1106(c)(1)(i)'s provisions regarding "victims" and "other government agenc[ies]" reveals that the General Assembly intended that restitution reach certain Commonwealth agencies in a manner that did not depend upon identifying such agencies as "victims," it nonetheless required first that the agency in question have provided compensation to a victim so defined. That is what necessitates our determination that DCED is not entitled to restitution in this case.
>
> In short, to qualify for restitution under Subsection 1106(c)(1)(i), a Commonwealth agency either must be a victim as that term is used in that subsection or must have reimbursed a victim[,] as defined by Section 11.103, directly or by paying a third party on behalf of the victim. . . .

Veon, 150 A.3d at 454 (emphasis added); see also Commonwealth v. Baney, 187 A.3d 1020, 1024 (Pa. Super. 2018) ("It is well-established that the Commonwealth is not a victim entitled to restitution."). As such, our Supreme Court held that the restitution was illegal and vacated Mr. Veon's judgment of sentence.

Likewise, in the instant matter, pursuant to the reasoning in Veon, Shenango Township is not a "victim" under Section 1106(c)(1)(i), nor an entity that has reimbursed a victim, either directly or indirectly, as defined by Section 11.103.[8] See Veon, 150 A.3d at 454-55. Accordingly, we are constrained to conclude that Appellant's restitution to Shenango Township is illegal and, therefore, void and unenforceable.

Although not raised by Appellant on appeal, we examine whether Appellant is obligated to pay $119,000 in restitution to Selective Insurance Company. Recognizing that an award of restitution relates to the legality of a sentence, we note that legality of sentence issues "may be reviewed sua

_____

[8] While this Court has not analyzed whether a township per se is a victim entitled to restitution under Section 1106, we note that a township is one entity that is regarded as a political subdivision of a Commonwealth. See 1 Pa.C.S.A. § 1991 ("A political subdivision is "[a]ny county, city, borough, incorporated town, township, school district, vocational school district, county institution district or municipal or other local authority."). In many provisions of the Pennsylvania Code, the Commonwealth and political subdivisions are treated similarly. See 246 Pa. Code 312; see also 231 Pa. Code 3159. Thus, we have used case law interpreting whether the Commonwealth is a victim for purposes of Section 1106 to analyze the instant issue involving a township.

sponte by this Court." Commonwealth v. Stradley, 50 A.3d 769, 774 (Pa. Super. 2012) (citation omitted).

An insurance company is only entitled to restitution if it is a victim as defined by Section 11.103, or it has compensated a victim for loss under Section 1106. See 18 Pa.C.S.A. § 1106(c)(1)(ii)(D); 18 P.S. § 11.103. As stated above in the context of a government agency, Section 11.103 defines a "victim" as an individual who has been harmed by the offender. 18 P.S. § 11.103. Just as a government agency is not entitled to restitution because it is neither an individual victim nor has it compensated an individual victim, an insurance company is not entitled to restitution if it is not an individual victim - which it is not - or it has not compensated an individual victim. Stated plainly, an insurance company is entitled to receive restitution only when it compensates a victim. Because we have determined that the Township is not a victim, Selective Insurance Company could not have compensated the Township as a victim. Thus, Appellant's restitution to Selective Insurance Company is also illegal and unenforceable.

The Commonwealth counters Appellant's claim that his restitution is illegal by asserting that "the restitution component of [Appellant's] sentence was the product of a specific, negotiated term of a plea agreement between the Commonwealth and [Appellant]." Commonwealth's Brief at 28. The Commonwealth emphasizes that in exchange for Appellant agreeing to pay restitution, which represented the full amount of stolen funds, the Commonwealth compromised by offering Appellant a significantly lesser

sentence of incarceration than he would have been exposed to had a jury convicted him of the charged offenses. Id. at 31. The Commonwealth maintains that "[a]s a matter of fundamental fairness, specific enforcement of the terms of the plea bargain in this case is required. . . ." Id. at 32.

We are not persuaded by the Commonwealth's argument that because this matter involves a negotiated plea agreement, specific performance of the plea's terms should be enforced irrespective of our Supreme Court's holding in Veon. Importantly, the Commonwealth's argument fails to recognize that Appellant's restitution claim implicates a legality of sentence issue. While it is imperative to enforce a contract between two parties, it is also well-settled law that a contract with an illegal term is void and unenforceable. Fowler v. Scully, 72 Pa. 456, 467 (1872). "[I]llegality is a traditional, generally applicable contract defense." Epic Sys. Corp. v. Lewis, 138 S. Ct. 1612, 1645 (2018). Even in the civil context, "an agreement that cannot be performed without violating a statute is illegal and will not be enforced." Rittenhouse v. Barclay White Inc., 625 A.2d 1208, 1211 (Pa. Super. 1993) (citing Dippel v. Brunozzi, 74 A.2d 112 (Pa. 1950)).

Having determined that the restitution component of Appellant's sentence is illegal, we must determine the appropriate remedy. Finding this case analogous to our decision in Commonwealth v. Melendez-Negron, 123 A.3d 1087 (Pa. Super. 2015), we are compelled to vacate Appellant's guilty plea in its entirety.

In Melendez–Negron, the appellant was charged with a variety of drug-related crimes. Pursuant to a negotiated plea agreement, the appellant pled guilty to possession with intent to deliver, and on November 15, 2013, the trial court sentenced him to 5 to 10 years in prison, pursuant to the mandatory minimum codified at 42 Pa.C.S.A. § 9712.1. Id. at 1089. The appellant did not file a direct appeal. However, he filed a timely PCRA petition, and claimed that "his sentence was unconstitutional, and therefore illegal, in light of [Alleyne[9]]." Id. He requested that the PCRA court vacate his sentence and remand the case for re-sentencing; he did not request that the PCRA court permit him to withdraw his guilty plea. Id. at 1091 n.7.

The PCRA court granted Mr. Melendez–Negron's PCRA petition, vacated his sentence, and remanded for re-sentencing. The Commonwealth filed a notice of appeal and claimed, inter alia, that the PCRA court erred when it merely vacated the sentence and remanded for re-sentencing. Id. at 1090. According to the Commonwealth, if the PCRA court was going to grant relief, it had to vacate Mr. Melendez–Negron's entire guilty plea, and "return [the case] to the status quo prior to the entry of the guilty plea." Id. at 1091. The Commonwealth argued: "in consideration of agreeing to a five-to-ten-year period of incarceration, [the Commonwealth] gave up the opportunity to seek sentences on the drug paraphernalia and small amount of marijuana charges. By simply allowing resentencing pursuant to the sentencing guidelines, the

_____

[9] Alleyne v. United States, 570 U.S. 99 (2013).

Commonwealth . . . [lost] the benefit of its bargain." Id. at 1092 (internal quotations and citations omitted).

We agreed with the Commonwealth and concluded that—even though Mr. Melendez–Negron did not request that his guilty plea be vacated—the PCRA court erred when it failed to vacate the entire plea and restore the case to its status prior to the entry of the plea. Id. at 1091–1092. We explained:

> [B]oth parties to a negotiated plea agreement are entitled to receive the benefit of their bargain. See Commonwealth v. Townsend, 693 A.2d 980, 983 (Pa. Super. 1997) ("[W]here the parties have reached a specific sentencing agreement . . . the court cannot later modify the terms of the agreement without the consent of the Commonwealth" because "this would deny the Commonwealth the full benefit of the agreement which it reached . . . and the defendant, in turn, would receive a windfall."); Commonwealth v. Coles, 530 A.2d 453 (Pa. Super. 1987) (holding that granting defendant's motion to modify negotiated plea sentence stripped Commonwealth of the benefit of its bargain). . . . Accordingly, we conclude that the shared misapprehension that the mandatory minimum sentence required by [42 Pa.C.S.A. § 9712.1] applied to Melendez–Negron tainted the parties' negotiations at the outset. . . . [T]he parties' negotiations began from an erroneous premise and therefore were fundamentally skewed from the beginning. Thus, while we affirm the PCRA court's order vacating Melendez–Negron's sentence, we further vacate his guilty plea and remand for further proceedings.

Melendez–Negron, 123 A.3d at 1093–94.

In this case, as with Melendez-Negron, Appellant and the Commonwealth entered into plea negotiations under "the shared misapprehension" that the Commonwealth was a victim entitled to restitution under 18 Pa.C.S.A. § 1106. Id. This misapprehension "tainted the parties' negotiations at the outset." Id. Therefore, both Appellant and the

Commonwealth are entitled to receive the benefit of their bargain, and we conclude – because "the parties' negotiations began from [the] erroneous premise" that the Commonwealth was a victim under Section 1106 – the PCRA court erred when it failed to grant relief on the issue of restitution. Id. Accordingly, we vacate Appellant's entire guilty plea and restore the case to its status prior to the entry of the plea.

Order affirmed in part and reversed in part. Restitution sentence vacated. Case remanded for proceedings consistent with this decision. Jurisdiction relinquished.

Judge Panella joins the opinion.

Judge Lazarus files a concurring and dissenting statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/27/2019