J-A20013-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| WESLEY A. MASSEY | : | |
| Appellant | : | No. 1897 WDA 2019 |

Appeal from the PCRA Order Entered August 19, 2019
In the Court of Common Pleas of Crawford County Criminal Division at
No(s): CP-20-CR-0000188-2016

BEFORE: BOWES, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.: FILED FEBRUARY 05, 2021

Wesley A. Massey appeals from the August 19, 2019 order dismissing his petition for relief under the Post-Conviction Relief Act ("PCRA").[1] After careful review, we vacate Appellant's judgment of sentence and nolo contendere plea, and remand with instructions.

Due to the nature of our disposition, we will review the factual and procedural history of this case only briefly. Between May 21, 2015, and June 15, 2015, Appellant utilized a credit card issued to him by his then-employer,

_____

[1] Appellant is pursuing a separate appeal from an unrelated PCRA petition at Commonwealth v. Massey, 1514 WDA 2019. These proceedings are closely related in terms of procedural history, as both were pending before the Court of Common Pleas of Crawford County during the same period of time. The records of both cases share major filings and significant hearing dates, as Appellant was represented by the same counsel at both docket numbers. However, the legal and factual issues raised in each appeal are distinct. Furthermore, the PCRA court independently adjudicated each petition and entered separate final orders denying them. As such, we decline to consolidate these appeals pursuant to Pa.R.A.P. 513.

Power Drives Incorporated ("PDI"), to purchase $42,286.19 in goods and services that were not authorized. In connection with these events, Appellant was charged with, inter alia, access device fraud.

Following protracted pre-trial motions practice and the appointment of four separate attorneys to represent Appellant, he entered a negotiated open plea of nolo contendere to the aforementioned offense in exchange for the Commonwealth entering a nolle prosequi as to the remaining charges. On March 27, 2018, Appellant was sentenced to an aggregate term of eighteen to sixty months of imprisonment and was also ordered to pay fines, costs, and restitution in the amounts of: (1) $14,491,69 to Hartford; and (2) $15,747.69 to Kazlow Fields. Specifically, these entities were identified as insurance companies that paid out claims directly to PDI related to Appellant's unauthorized purchases. See N.T. Sentencing, 3/23/18, at 4-5 ("[T]here is restitution being sought. There is actually none due to PDI. However, they did have two insurance companies that paid out claims to them.").

Thereafter, Appellant sought leave to represent himself in filing a direct appeal to this Court. Following a Grazier hearing[2] and after a waiver of counsel colloquy was held, Appellant was permitted to proceed with a timely pro se direct appeal. See Order, 4/23/18, at 1. On August 31, 2018, this Court dismissed Appellant's pro se appeal due to his failure to file a brief.

_____

[2] Commonwealth v. Grazier, 713 A.2d 81 (Pa. 1998).

- 2 -

Appellant filed a timely pro se PCRA petition and the PCRA court appointed counsel to represent Appellant. After a second Grazier hearing was held, however, Appellant was again permitted to proceed pro se. The PCRA court also made a provision for the potential appointment of standby counsel "[i]n the event the [PCRA court] concludes that [Appellant] is entitled to an evidentiary hearing on any of the issues that he will ultimately raise or has already raised." Order, 6/14/19, at 1. Thereafter, Appellant did not seek leave to amend his pro se petition in the above-captioned case, but filed a supplemental memorandum of law that the PCRA court accepted and considered. See Memorandum and Order, 7/23/19, at 3.

The PCRA court gave notice of its intent to dismiss Appellant's petition without a hearing. Appellant did not tender a response, and the PCRA court entered a final order denying and dismissing his petition. See Order, 8/19/19, at 1. Appellant filed a timely pro se notice of appeal. Both he and the PCRA court have complied with their obligations under Pa.R.A.P. 1925.

Appellant raises the following issues for our consideration:

> 1. Is the restitution component of [Appellant's] sentence in the amount of $14,491.[69] to Hartford Insurance and Kazlow Fields in the amount of $15,747.69, both [of] which was paid to PDI Corporation illegal and does his plea have to be vacated as a matter of law as a result?[3]

_____

[3] Appellant first raised this claim concerning the restitution portion of his sentence on appeal in this case. As discussed further infra, this claim sounds in legality of sentence and is, therefore, nonwaiveable. See Commonwealth v. Weir, 239 A.3d 25, 37 (Pa. 2020) (identifying a claim that a sentencing court has erroneously imposed restitution outside of "the statutory circumstances" as one that "need not be preserved").

- 3 -

2. Did the PCRA [c]ourt err in denying [Appellant] relief in the form of a new trial on the basis of ineffective assistance of trial/plea counsel, as result of puffery, lack of investigation/preparation, and competent strategy, induced him to enter a nolo contedere plea [with a substantial restitution component] to a crime he did not commit?

3. Did the PCRA [c]ourt err when it upheld a conviction given the newly discovered evidence submitted and given that [Appellant's] conduct for the criminal statute of 18 Pa.C.S. § 4106(a)(1)(iv)[,] as properly interpreted, does not prohibit the conduct of [Appellant]?

Appellant's brief at 4 (internal citations omitted; issues reordered).

Our standard and scope of review in this context is well-established:

Our standard of review in a PCRA appeal requires us to determine whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. The scope of our review is limited to the findings of the PCRA court and the evidence of record, which we view in the light most favorable to the party who prevailed before the court. . . . The PCRA court's factual findings and credibility determinations, when supported by the record, are binding upon this Court. . . . However, we review the PCRA court's legal conclusions de novo.

Commonwealth v. Small, 238 A.3d 1267, 1280 (Pa. 2020) (internal quotation marks and citations omitted). Appellant's first issue implicates the legality of his sentence. "[T]he determination as to whether the trial court imposed an illegal sentence is a question of law; our standard of review in cases dealing with questions of law is plenary." Commonwealth v. Atanasio, 997 A.2d 1181, 1183 (Pa.Super. 2010).

Appellant's first claim concerns the legality of the restitution portion of his criminal sentence.[4] See Appellant's brief at 14-17. Although disorganized and interspersed with non-sequiturs, we readily discern that Appellant's first claim implicates the trial court's statutory authority to impose restitution at 18 Pa.C.S. §§ 1106(a) and (c)(1)(i) (providing that "upon conviction for any crime wherein property has been stolen, converted or otherwise unlawfully obtained," the trial court "shall order full restitution [r]egardless of the current financial resources of the defendant, so as to provide the victim with the fullest compensation for the loss." (emphasis added)).[5]

"Restitution is a creature of statute and, without express legislative direction, a court is powerless to direct a defendant to make restitution as part of his sentence." Commonwealth v. Kinnan, 71 A.3d 983, 986 (Pa.Super. 2013). "[W]here restitution is imposed in addition to a statutory punishment,

_____

[4] "In the context of criminal proceedings, an order of restitution is not simply an award of damages, but, rather, a sentence." Commonwealth v. Atanasio, 997 A.2d 1181, 1182-83 (Pa.Super. 2010) (internal citation and quotation marks omitted). "An appeal from an order of restitution based upon a claim that a restitution order is unsupported by the record challenges the legality, rather than the discretionary aspects, of sentencing." Id. at 1183.

[5] An amended version of § 1106 took effect on October 24, 2018. See Commonwealth v. Hunt, 220 A.3d 582, 585 (Pa.Super. 2019). However, the pre-amendment iteration of § 1106 was in effect when Appellant's crimes were committed, when he entered his plea, and when he was sentenced. Thus, we will review the legality of his sentence under the pre-amendment version of § 1106. Id. at 586 (declining to apply the post-amendment version of § 1106 to a case where "all of the relevant events predate the effective date of the at-issue amendments to § 1106 by months (or years)").

such as imprisonment, the order must be strictly scrutinized since its purpose is primarily punitive." Commonwealth v. Harner, 617 A.2d 702, 704 (Pa. 1992); see also 1 Pa.C.S. § 1928(b)(1) (requiring that all "[p]enal provisions" of Pennsylvania statutes to be "strictly construed").

Appellant's argument is centered upon the definition of "victim" that appears in § 1106:

> "Victim." As defined in section 479.1 of the act of April 9, 1929 (P.L. 177, No. 175), known as The Administrative Code of 1929.1 The term includes the Crime Victim's Compensation Fund if compensation has been paid by the Crime Victim's Compensation Fund to the victim and any insurance company that has compensated the victim for loss under an insurance contract.

18 Pa.C.S. § 1106(h) (emphasis added). This Court has previously concluded that this language ultimately refers to a concomitant definition in the Crime Victims Act ("CVA"), at 18 P.S. § 11.103. See Commonwealth v. Hunt, 220 A.3d 582, 590 (Pa.Super. 2019) ("[T]he definition of 'victim' under the CVA . . . is the sole definition for our purposes under § 1106."); Commonwealth v. Tanner, 205 A.3d 388, 396-97 (Pa.Super. 2019) (same).

Under the CVA, "victim" is defined as follows:

(1) A direct victim.

(2) A parent or legal guardian of a child who is a direct victim, except when the parent or legal guardian of the child is the alleged offender.

(3) A minor child who is a material witness to [criminal homicide, aggravated assault, or rape] committed or attempted against a member of the child's family.

(4) A family member of a homicide victim, including stepbrothers or stepsisters, stepchildren, stepparents or a fiancé, . . . .

18 Pa.C.S. § 11.103. The CVA defines the term "direct victim" referenced above as "[a]n individual against whom a crime has been committed or attempted and who as a direct result of the criminal act or attempt suffers physical or mental injury, death or the loss of earnings under this act." Id.

Viewing these statutory provisions in conjunction with one another, our Supreme Court has previously concluded: "[I]t is clear that the plain text of Section 11.103 still envisages 'victims' as 'persons' commonly understood. . . . Every relevant noun unequivocally describes a human being, . . ., and nowhere else is there a relevant definition that persuades us to broaden the common understanding of these words." Commonwealth v. Veon, 150 A.3d 435, 454 (Pa. 2016) (emphasis in original).

Consistent with Veon and in the specific context of Appellant's claim for relief, this Court has provided that "[a]n insurance company is only entitled to restitution if it is a victim as defined by Section 11.103, or it has compensated a victim for loss under Section 1106." Tanner, supra at 398. However, an insurance company is not a "victim" as that term is defined under § 11.103. Id. Therefore, "[s]tated plainly, an insurance company is entitled to receive restitution only when it compensates a victim." Id.

Instantly, both Hartford and Kazlow Fields were awarded restitution in connection with claim payments that they tendered to PID, which is a

corporate entity. See N.T. Sentencing, 3/23/18, at 4-5. This Court has held that corporate entities do not qualify as "victims" under the pre-amendment version of § 1106. See Hunt, supra at 591 (holding that "corporate entities" are not included in the operative definition of "victim" that applies to § 1106). Thus, PID also does not qualify as a victim for the purposes of restitution. Consequently, we are constrained to conclude that the restitutionary portion of Appellant's sentence is illegal. Accord Tanner, supra at 398 (holding that an insurance company was not entitled to restitution under § 1106 because it had not compensated a victim as defined by the statute).

We must determine an appropriate remedy. Appellant has asserted that we should vacate his entire plea and return the case to the status quo that existed prior to his acceptance of it. The Commonwealth does not dispute that Appellant's sentence is illegal, but suggests in passing that Appellant should merely be resentenced. We agree with Appellant.

Specifically, we find the holding in Tanner to be instructive on this point. In that case, as noted above, this Court concluded that an insurance company was not entitled to compensation under § 1106, which rendered the restitution portion of the defendant's sentence illegal. However, the defendant's obligation to pay restitution had been a critical part of his negotiated plea with the Commonwealth. Rather than simply remand for resentencing, we vacated the defendant's "entire guilty plea" and restored the "status quo" prior to the entry of the plea. Id. at 400. We discussed this holding as follows:

> Appellant and the Commonwealth entered into plea negotiations under the shared misapprehension that the Commonwealth was a victim entitled to restitution under [§ 1106]. This misapprehension tainted the parties' negotiations at the outset. Therefore, both Appellant and the Commonwealth are entitled to receive the benefit of their bargain, and we conclude – because the parties' negotiations began from the erroneous premise that the Commonwealth was a victim under Section 1106 – the PCRA court erred when it failed to grant relief on the issue of restitution. Accordingly, we vacate Appellant's entire guilty plea and restore the case to its status prior to the entry of the plea.

Id. (citations and quotation marks omitted); see also Commonwealth v. Melendez-Negron, 123 A.3d 1087, 1093-94 (Pa.Super. 2015) (same).

As was evident throughout the sentencing hearing, the restitution component of Appellant's sentence was a vital assumption of the parties and the trial court. See N.T. Sentencing, 3/23/18, at 4-14. Simply remanding for resentencing would risk providing either Appellant or the Commonwealth with a "windfall," at the unjust expense of the other party. Accord Tanner, supra at 400; Melendez-Negron, supra at 1093-94. Based upon the foregoing discussion, we believe that the appropriate remedy is to return this case to the status quo that existed prior to the entry of Appellant's plea. Thus, we vacate Appellant's sentence and nolo contendere plea and remand for further proceedings.[6] Due to the nature of our holding, we will not address the balance of Appellant's remaining claims.

_____

[6] But see Hunt, supra at 591-92 (finding the restitution element of a negotiated guilty plea and sentence was illegal under § 1106 and remanding for resentencing while leaving the plea intact).

Judgment of sentence and nolo contendere plea vacated. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/5/2021