J-A11010-19

2019 PA Super 296

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
BRIAN F. HUNT :
:
Appellant : No. 911 MDA 2018

Appeal from the Order Entered May 4, 2018
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0004356-2016

BEFORE: BOWES, J., OLSON, J., and STABILE, J.

OPINION BY BOWES, J.: **FILED OCTOBER 01, 2019**

Brian F. Hunt appeals from the May 4, 2018 order denying his request for the modification of restitution imposed pursuant to 18 Pa.C.S. § 1106. After careful review, we reverse and remand for resentencing.

The order of restitution at issue in this case stems from Appellant's guilty pleas to two felonies in connection with his misappropriation of funds from his former employer, Bass Pallets LLC ("Bass Pallets"), a Pennsylvania limited liability company that purchases and repurposes used pallets. While employed by Bass Pallets, Appellant had the authority to write checks on behalf of the company, and used that authority to initiate a series of sham transactions by writing checks from Bass Pallets to two unindicted co-conspirators, Jeff Stickle and Johanna Rodriguez-Cruz, in exchange for illusory sales of pallets. The co-conspirators then cashed these fraudulent instruments and split the resulting proceeds with Appellant. On July 27, 2016, Appellant was charged by criminal

complaint with theft by unlawful taking, 18 Pa.C.S. § 3921(a), and forgery, 18 Pa.C.S. 4101(a)(2), following surveillance and investigation conducted by the Pennsylvania State Police. *See* Trial Court Opinion, 10/17/18, at 1-3.

On February 1, 2018, Appellant pleaded guilty to both charges and was sentenced to sixty months of intermediate punishment, with the first nine months to be served under house arrest. *See* February 1, 2018 Guilty Plea Order at 1. As part of his sentence, Appellant was directed to pay restitution in the amount of $37,625 to Bass Pallets pursuant to § 1106. This restitution reflected the total amount of all checks written to Stickle and Rodriguez-Cruz that "had no supportive documents legitimizing the transactions." *See* Trial Court Opinion, 10/17/18, at 2-3; *see also* February 1, 2018 Restitution Information at 1. During his guilty plea colloquy, Appellant requested a hearing to modify the restitution imposed by the trial court, which was granted. *See* February 1, 2018 Order.

On May 4, 2018, the trial court held a modification hearing, at which Appellant argued that the trial court was not statutorily empowered to impose restitution upon him under § 1106 with respect to a limited liability company, citing our Supreme Court's holding in ***Commonwealth v. Veon***, 150 A.3d 435 (Pa. 2016) in support of his position. *See* N.T. Modification Hearing, 5/4/18, at 4. An off-the-record sidebar took place concerning the legal specifics of Appellant's claims and the Commonwealth adduced factual

testimony from Jeffrey L. Stoner, one of the co-owners of Bass Pallets. *Id*. at 3-24. At the conclusion of the hearing, the trial court declined to modify its restitution order, notwithstanding Appellant's argument that Bass Pallets was not a proper "victim" for the purposes of § 1106 under **Veon**. *Id.* at 24-25 (emphasis added). An order denying Appellant's request for modification of restitution was entered the same day. On June 4, 2018, Appellant timely filed a notice of appeal.[1] On June 6, 2018, the trial court directed Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant timely complied.

Appellant essentially argues that it was "illegal for the court to order restitution to a victim who is a limited liability company because the definition of 'victim' in the version of Pennsylvania's restitution statute (18 Pa.C.S. § 1106) applicable on the offense dates of the instant prosecution failed to include any non-human business entity other than an insurance company . . . ." **See** Appellant's brief at 4; **see also** Appellant's Rule 1925(b) Statement at ¶ 6 ("As the restitution in this matter was ordered to compensate a business entity that is neither an enumerated victim under the statute nor

---

[1] Facially, the timing of Appellant's Notice of Appeal appears to violate Pennsylvania Rule of Appellate Procedure 903(a), which provides that "the notice of appeal . . . shall be filed within 30 days after the entry of the order from which the appeal is taken." Appellant's notice was not filed until thirty-one (31) days after the entry of the appealed-from order. However, because the last day of Appellant's window to appeal originally fell on a Sunday, *i.e.*, June 3, 2018, the filing is considered timely. **See** Pa.R.A.P. 107 ("Rules of Construction"); 1 Pa.C.S. § 1908 ("Computation of time.").

an actual person, [the trial court] erred in ordering restitution in this matter."). The gravamen of Appellant's argument is that the definition of "victim" set forth at 18 Pa.C.S. § 1106 does not include corporate entities like Bass Pallets, rendering the restitution portion of Appellant's sentence illegal under Pennsylvania law.

We note that "[i]n the context of criminal proceedings, an order of 'restitution is not simply an award of damages, but, rather, a sentence.'" *Commonwealth v. Atanasio*, 997 A.2d 1181, 1182-83 (Pa.Super. 2010) (quoting *Commonwealth v. C.L.*, 963 A.2d 489, 494 (Pa.Super. 2008)). As such, "[a]n appeal from an order of restitution based upon a claim that a restitution order is unsupported by the record challenges the legality, rather than the discretionary aspects, of sentencing." *Id.* at 1183 (citing *Commonwealth v. Redman*, 864 A.2d 566, 569 (Pa.Super. 2004)). Accordingly, "'the determination as to whether the trial court imposed an illegal sentence is a question of law; our standard of review in cases dealing with questions of law is plenary.'" *Id.* (quoting *Commonwealth v. Hughes*, 986 A.2d 159, 160 (Pa.Super. 2009)). This case will also necessarily call upon us to engage in statutory construction, which similarly presents a pure question of law and also implicates the legality of Appellant's sentence. *Commonwealth v. Shiffler*, 879 A.2d 185, 189 (Pa. 2005) (citing *Commonwealth v. Bradley*, 834 A.2d 1127, 1131 (Pa. 2003)). Thus, our standard of review is *de novo* and our scope of review is plenary.

Section 1106 was amended on October 24, 2018 by the Pennsylvania General Assembly during the pendency of this appeal but long after Appellant's criminal actions, guilty plea, and sentencing were completed. *See* 2018 Pa. Legis. Serv. Act 2018-145 (S.B. 897). Preliminarily, we observe that Appellant did not argue the retroactive application of § 1106 in his Rule 1925(b) concise statement. *See* Appellant's Rule 1925(b) Statement at ¶¶ 1-6. Nonetheless, both Appellant and the Commonwealth have devoted significant space in their respective briefs addressing which iteration of 18 Pa.C.S. § 1106 should be applicable to Appellant's sentence. *See*, *e.g.*, Appellant's brief at 23-27; Commonwealth's brief at 8-10. However, the trial court did **not** apply the "new" version of § 1106 in crafting the restitution portion of Appellant's direct sentence.[2] Rather, as we discuss *infra*, the trial court properly applied the pre-amendment version of § 1106 in fashioning Appellant's sentence, but in doing so, it erroneously enlarged the definition of victim to include a corporate entity. *See* Trial Court Opinion, 10/17/18, at 6-9, 10-11.

Instead, the retroactive application of the amendments to § 1106 is presented by the Commonwealth as a type of "savings" argument:

---

[2] Given the instant procedural chronology, it would have been functionally impossible for the trial court to apply the amendments to § 1106 to Appellant's case during the initial proceedings. Appellant pleaded guilty and was sentenced on February 1, 2018, and the hearing on Appellant's request for modification of his sentence was held on May 4, 2018. *See* Trial Court Opinion at 1-3. The amendments to § 1106 were not passed and promulgated by the General Assembly until October 24, 2018, or nearly six months later. *See* 2018 Pa. Legis. Serv. Act 2018-145 (S.B. 897).

[A]fter the lower court in this instance filed its memorandum opinion, the General Assembly rewrote the definition of "victim" in 18 Pa.C.S. § 1106(h) on October 24, 2018. The new definition, as [Appellant] concedes, includes limited liability companies as victims. This new definition applies to [Appellant] as his judgment of sentence is not yet final and the General Assembly indicated that the 2018 amendment was effective immediately.

Commonwealth's brief at 8. In apparent anticipation of the Commonwealth's claim, Appellant argues that the *ex post facto* application of the amended version of § 1106 would violate Article I, § 10 of the U.S. Constitution ("No State shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any title of Nobility.") and Article I, § 17 of the Pennsylvania Constitution ("No ex post facto law, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed."). ***See*** Appellant's brief at 23-27.

We decline to give retroactive effect to the October 24, 2018 amendments to § 1106. While Pennsylvania's rules of statutory construction clearly provide that the General Assembly **may** give retroactive effect to legislation, it requires that the legislature do so unambiguously. ***See*** 1 Pa.C.S. § 1926 ("No statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly."). In relevant part, the legislation adopted by the General Assembly provides only that "[t]his act shall take effect immediately," ***see*** 2018 Pa. Legis. Serv. Act 2018-145 (S.B. 897) at § 3, and no provision therein explicitly calls for its retroactive implementation. Moreover, this Court has already held that these specific

amendments to § 1106 should **not** be effective in criminal cases that began before the effective date of the legislation, holding that "[b]ecause the events that led to [a]ppellant's conviction occurred before October 24, 2018, [the since-repealed] version of the statute applies." **Commonwealth v. Tanner**, 205 A.3d 388, 396 n.7 (Pa.Super. 2019).[3]   In **Tanner**, the appellant challenged the portion of his direct sentence requiring him to pay substantial restitution to Shenango Township in Lawrence County, Pennsylvania under § 1106.  **Id.** at 395-96.  Ultimately, this Court concluded this restitution was illegal because Shenango Township was not considered a "victim" under the relevant statutory provisions, relying directly upon our Supreme Court's guidance in **Commonwealth v. Veon**, 150 A.3d 435 (Pa. 2016).  **Id.** at 398.

Turning to the factual background of this case, we note that: (1) the events that formed the basis for Appellant's guilty plea took place during or about July 2016; (2) Appellant pleaded guilty and was sentenced on February

---

[3]  This same general principle is also found in case law interpreting § 1926's proscription against retroactivity in the context of criminal sentencing statutes.  **See Commonwealth v. Story**, 440 A.2d 488, 489-90 (Pa. 1981) (holding that retroactive application of a criminal sentencing statute years after the crime was committed was impermissible under Pennsylvania law); **Commonwealth v. McKenna**, 383 A.2d 174, 180 n.13 (Pa. 1978) (holding that newly promulgated portions of the Sentencing Code were inapplicable to a case involving an underlying crime committed before the effective date of the new statutory scheme); **Commonwealth ex rel. Lyons v. Day**, 110 A.2d 871, 872 (Pa.Super. 1955) (holding amendment of criminal sentencing statute was not retroactive such that it applied to a person who committed a crime and was sentenced prior to the statute's effective date).

1, 2018; and (3) Appellant's challenge to the trial court's sentence of restitution was denied on May 4, 2018. **See** Trial Court Opinion, 10/17/18, at 1-3. Thus, all of the relevant events predate the effective date of the at-issue amendments to § 1106 by months (or years). In light of our previous holding in **Tanner** and the command of § 1926, we conclude that the October 24, 2018 amendments to § 1106 are **not** applicable in the instant case. Accordingly, we decline to address the constitutionality of *ex post facto* application of the amendments to § 1106 in this memorandum.[4/5]

_____

[4] Beyond adhering to *stare decisis*, such an interpretation of the amendments to § 1106 also effectively avoids the constitutional arguments concerning the *ex post facto* application of the amendments to § 1106. In constructing a Pennsylvania statute, "[t]he 'canon of constitutional avoidance' provides that when a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter." **Veon**, **supra** at 455 (citing **Harris v. U.S.**, 536 U.S. 545, 555 (2002)); **see also** 1 Pa.C.S. § 1922.

[5] We are also unpersuaded by the Commonwealth's discussion of this Court's prior holding in **Commonwealth v. Kline**, 695 A.2d 872 (Pa. Super. 1997) for the broad proposition that amendments to Pennsylvania's restitution statutes are generally applied retroactively. **See** Commonwealth's brief at 9-10. In **Kline**, the trial court imposed a direct sentence of restitution upon the appellant-defendant under a version of § 1106 that became law after the commission of the appellant-defendant's crime. **Id.** at 873. In this instance, § 1106 was amended to include insurance companies under the definition of "victims." **Id.** The issue in **Kline** pertained solely to whether Article I, § 10 of the U.S. Constitution permitted such an *ex post facto* application of amendatory law. **Id.** at 873-74. Ultimately, **Kline** affirmed the trial court's imposition of restitution after finding it was not sufficiently punitive to violate the Ex Post Facto Clause of the U.S. Constitution. **Id.** at 877. The instant case is readily distinguishable. As noted above, the trial court did **not** apply the amended version of § 1106 to Appellant's case and, thus, there is no constitutional issue to adjudicate. The only *ex post facto* concern in this case

Turning to the discrete issue of statutory interpretation, we must determine whether the trial court was properly empowered to sentence Appellant to pay restitution to a limited liability company under the pre-amendment version of § 1106. It is well-established under Pennsylvania law that "[r]estitution is a creature of statute and, without express legislative direction, a court is powerless to direct a defendant to make restitution as part of his sentence." *Commonwealth v. Kinnan*, 71 A.3d 983, 986 (Pa.Super. 2013) (citing *Commonwealth v. Harner*, 617 A.2d 702, 704 (Pa. 1992)). While Pennsylvania statutes generally should be construed liberally, "penal statutes are always to be construed strictly, and any ambiguity in a penal statute should be interpreted in favor of the defendant." *Shiffler*, *supra* at 189 (citing *Commonwealth v. Driscoll*, 401 A.2d 312, 316 (Pa. 1979)); *see also* 1 Pa.C.S. § 1928(b)(1). Finally, "where restitution is imposed in addition to a statutory punishment, such as imprisonment, the order must be strictly scrutinized since its purpose is primarily punitive." *Harner*, *supra* at 704 (Pa. 1992) (citing *Commonwealth v. Walton*, 397 A.2d 1179, 1184 (Pa. 1979)).

The pre-amendment version of § 1106 provides as follows:

**(a) General rule.**--Upon conviction for any crime wherein property has been stolen, converted or otherwise unlawfully

_____

is purely prospective and, as discussed above, is ultimately foreclosed by *Tanner* and the General Assembly's drafting of the amendments to § 1106. Due to these factual and legal distinctions, *Kline* is inapposite. We make no pronouncement regarding the arguable constitutionality of the retroactive application of § 1106, specifically, or Pennsylvania statutes, generally.

obtained, . . . or wherein the victim suffered personal injury directly resulting from the crime, the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor.

. . . .

**(c) Mandatory restitution.**—

  (1) The court shall order full restitution:

  (i) Regardless of the financial resources of the defendant, so as to provide the victim with the fullest compensation for the loss. . . .

  (ii) If restitution to more than one person is set at the time, the court shall set priorities of payment.  However, when establishing priorities, the court shall order payment in the following order:

   (A) The victim.

   (B) The Crime Victim's Compensation Board.

   (C) Any other government agency which has provided reimbursement to the victim as a result of the defendant's criminal conduct.

   (D) Any insurance company which has provided reimbursement to the victim as a result of the defendant's criminal conduct.

. . . .

**(h) Definitions.**--As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

. . . .

**"Victim."**  As defined in section 479.1 of the act of April 9, 1929 (P.L. 177, No. 175), known as The Administrative Code of 1929. The term includes the Crime Victim's Compensation Fund if compensation has been paid by the Crime Victim's Compensation

Fund to the victim and any insurance company that has compensated the victim for loss under an insurance contract.

18 Pa.C.S. §§ 1106(a), (c), and (h) (repealed Oct. 24, 2018, P.L. 891, No. 145, § 1, effective Jan. 31, 2005) (internal footnote omitted).

Under this version of the statute, the term "victim" is largely defined by reference to The Administrative Code of 1929. The Administrative Code of 1929 defined "victim" as:

(1) A person against whom a crime is being or has been perpetrated or attempted.

(2) A parent or legal guardian of a child so victimized, except when the parent or legal guardian of the child is the alleged offender.

(3) A family member of a homicide victim, including stepbrothers or stepsisters, stepchildren, stepparents or a fiancé, one of whom is to be identified to receive communication as provided for in this act.

*Commonwealth v. Holmes*, 155 A.3d 69, 80 (Pa.Super. 2017) (*en banc*) (quoting 71 P.S. § 180-9.1). However, the definition of "victim" set forth in the Administrative Code of 1929 was itself repealed in 1998, and the operative definition of the term "victim" under the Crime Victims Act ("CVA") at 18 P.S. § 11.103 took its place. *See Commonwealth v. Brown*, 981 A.2d 893, 896 n.9 (Pa. 2009); *Commonwealth v. Hall*, 80 A.3d 1204, 1214 n.5 (Pa. 2013) (same). Under the CVA, victim is defined as follows:

**"Victim."** The term means the following:

(1) A direct victim.

(2) A parent or legal guardian of a child who is a direct victim, except when the parent or legal guardian of the child is the alleged offender.

(3) A minor child who is a material witness to any of the following crimes and offenses under 18 Pa.C.S. (relating to crimes and offenses) committed or attempted against a member of the child's family:

Chapter 25 (relating to criminal homicide).

Section 2702 (relating to aggravated assault).

Section 3121 (relating to rape).

(4) A family member of a homicide victim, including stepbrothers or stepsisters, stepchildren, stepparents or a fiancé, one of whom is identified to receive communication as provided for in this act, except where the family member is the alleged offender.

18 P.S. § 11.103. The term "direct victim" set forth under § 11.103 is defined under the same section as "[a]n individual against whom a crime has been committed or attempted and who as a direct result of the criminal act or attempt suffers physical or mental injury, death or the loss of earnings under this act." *Id.*

The trial court's memorandum opinion concludes that both the repealed definition of "victim" set forth in the Administrative Code of 1929 and the definition in the CVA may co-exist as concurrent definitions of the same word. *See* Trial Court Opinion, 10/17/18, at 6-7 (citing *Holmes*, *supra* at 80; 18 P.S. § 11.103; 18 P.S. § 11.5102). In relevant part, the CVA provides that "[t]his act is a codification of the statutory provisions repealed in section 5103 and, **except where clearly different from current law**, shall be deemed to be a continuation of prior law." 18 P.S. § 11.5102 (emphasis added); *see*

*also* 1 Pa.C.S. § 1962 ("Whenever a statute is repealed and its provisions are at the same time reenacted **in the same or substantially the same terms by the repealing statute,** the earlier statute shall be construed as continued in active operation." (emphasis added)).

We cannot agree with the trial court's conclusion that these two definitions are similar enough so as to render them interchangeable. In relevant part, the CVA's definition introduces an entirely new term of art ("direct victim") and explicitly includes certain categories of minor, material witnesses who would not be included under any plain reading of the Administrative Code of 1929's parallel provisions. **Compare** 18 P.S. § 11.103 **with** 71 P.S. § 180-9.1. Furthermore, the new term "direct victim" is limited in applicability to those individuals who suffer "physical or mental injury, death or the loss of earnings" as result of the crime committed. **See** 18 P.S. § 11.103. By contrast, the definitions set forth in the Administrative Code of 1929 contain no similar limitations. Finally, the trial court's invocation of our holding in **Holmes** is not persuasive because there was no majority opinion rendered by that equally-divided, *en banc* panel and, thus, no controlling precedent resulted. **See Commonwealth v. Davis**, 188 A.3d 454, 457 n.2 (Pa.Super. 2018) ("'When a court is faced with a plurality opinion, usually only the result carries precedential weight; the reasoning does not.'") (quoting **Commonwealth v. Bethea**, 828 A.2d 1066, 1073 (Pa. 2003)). Accordingly, we conclude that the definition of "victim" under the CVA that entered force

in 1998 is the sole definition for our purposes under § 1106. *See Brown*, *supra* at 896 n.9; *Veon*, *supra* at 449.

Reviewing the applicable statutory definition under the CVA, it is beyond dispute that Bass Pallets does not qualify as a "parent or legal guardian," a "minor child," or as a "family member of a homicide victim." *See* 18 P.S. § 11.103. Thus, Bass Pallets may be eligible for restitution via Appellant pursuant to § 1106 only if it can qualify as a "direct victim" under the CVA. *Id*. In relevant part, the definition of "direct victim" is bipartite in nature, and requires both that an "individual" be the subject of a crime that has either been committed or attempted **and** suffer a physical or mental injury, death, or a loss of earnings as a direct result of that criminal act or attempt. *Id*.

These statutory restrictions upon the definition of "victim" under § 1106 raise immediate concerns regarding the trial court's imposition of restitution as a component of Appellant's sentence under § 1106. It is not clear that Bass Pallets qualifies as an "individual" under § 11.103 (and, therefore, as a "direct victim"). In its discussion of this issue in *Veon*, our Supreme Court concluded that this language refers exclusively to human beings:

> Notwithstanding any legislative expansion of the definition of "victim," it is clear that the plain text of Section 11.103 still envisages "victims" as "persons" commonly understood. A "victim" under Section 11.103 must be "a direct victim," *i.e.*, an "individual" who has suffered injury, death, or loss of earnings; or a "child," "parent," "guardian," or "family member." Every relevant noun unequivocally describes a human being, . . ., and nowhere else is there a relevant definition that persuades us to broaden the common understanding of these words.

- 14 -

*Veon*, *supra* at 453; *see also Tanner*, *supra* at 397-98 (same). The holdings in *Veon* and *Tanner* are not in perfect parity with the present factual situation, as Bass Pallets is a Pennsylvania corporate entity as opposed to a Commonwealth agency. The trial court maintains this distinction is dispositive, and that the catch-all definitions set forth at 1 Pa.C.S. § 1991 of the Statutory Construction Act of 1972 include corporate entities under the definition of "individual." *See* Trial Court Opinion, 10/17/18, at 7.

Again, we must disagree. The definitions at § 1991 apply to the statutes discussed above "unless the context clearly indicates otherwise, . . ." 1 Pa.C.S. § 1991. Even assuming, *arguendo*, that these definitions **are** applicable, the trial court's treatment of this issue bespeaks an inappropriately selective interpretation of the terms described throughout § 1991. To wit, the definition of "individual" under § 1991 is given as "[a] **natural** person," which the trial court treats as merely interchangeable with the separate definition of "person" under the same statute. *Id.* (quoting 1 Pa.C.S. § 1991) (emphasis added). Yet, the distinction under Pennsylvania law is quite clear: "An 'individual' is a 'natural person,' while the broader term 'person' includes both natural persons and other types of entities, such as corporations. *See* 1 Pa.C.S. § 1991. **Under those definitions, a corporation is a person, but it is not an 'individual.'"** *Calif. Univ. of Penna. v. Bradshaw*, ___ A.3d ___,

2019 WL 2305947, at *3 (Pa.Cmwlth. May 31, 2019) (emphasis added).[6]

Even the definition of "person" under § 1991 draws a clear demarcation between any number of corporate entities (including limited liability companies) and a "natural person." 1 Pa.C.S. § 1991. Therefore, we conclude that the inter-related definitions of "direct victim," "individual," and "natural person" pursuant to the pre-amendment version of § 1106 do **not** include corporate entities as discussed above.[7] Such a conclusion is necessitated by a plain reading of these statutes, and has the additional virtue of giving full weight to the Supreme Court's discussion of these same provisions in **Veon**.[8]

---

[6] Our settled precedent permits us to cite the holdings of our brethren in the Commonwealth Court where it is persuasive and expedient: "This Court is not bound by the decisions of the Commonwealth Court. However, such decisions provide persuasive authority, and we may turn to our colleagues on the Commonwealth Court for guidance when appropriate." **Petow v. Warehime**, 996 A.2d 1083, 1088 n.1 (Pa.Super. 2010) (quoting **Maryland Cas. Co. v. Odyssey**,s 894 A.2d 750, 756 n.2 (Pa.Super. 2006)).

[7] We also note that our reading of § 1106 indicates that the pre-amendment statute was not drafted to encompass "victims" of property crimes. **See Veon**, **supra** at 463 ("Section 1106, as it is currently written, has no provision requiring or permitting restitution for a crime where the victim suffers only a loss of money or property, . . . .") (Donohue, J.) (concurring & dissenting opinion). It seems unlikely that Bass Pallets would be able to establish a "loss of earnings" for the purposes of this definition. **See** 18 P.S. § 11.103 (defining "loss of earnings" as "the loss of the cash equivalent of one month's worth of Social Security, railroad retirement, pension plan, retirement plan, disability, veteran's retirement, court-ordered child support or court-ordered spousal support payments if the payments are the primary source of the victims income and the victim is deprived of money as a direct result of a crime.").

[8] Our conclusion that corporations are not included within the statutory definitions applicable to § 1106 prior to October 24, 2018 is further buttressed

- 16 -

Based on the above discussion, we are constrained to conclude that the definition of "direct victim" under the CVA (and, consequently, the definition of "victim" under the pre-amendment version of § 1106) does not include corporate entities like Bass Pallets. Therefore, the restitution portion of Appellant's sentence is illegal, and must be vacated. **See Veon**, **supra** at 453; **Tanner**, **supra** at 397-98; **see also** 18 Pa.C.S. § 1106(h); 18 P.S. § 11.103; 1 Pa.C.S. § 1991. On remand, we direct the trial court to resentence Appellant in conformity with the principles and precedents discussed in this opinion.[9]

_____

by the legislative history undergirding these amendments. In particular, a memorandum from two of the amendatory bill's co-sponsors (Senators Patrick J. Stefano & Lisa M. Boscola) clearly identify the effect of our Supreme Court's holding in **Veon**: "Due to a recent decision by the Pennsylvania Supreme Court, . . . entities such as local governments or businesses cannot be reimbursed in a case where, if the victim were an individual, it would be within the boundaries of the court to order restitution." Sen. Patrick J. Stefano, *et al.*, "Memorandum," August 21, 2017, *available at* https://www.legis.state.pa.us/cfdocs/Legis/CSM/showMemoPublic.cfm?chamber=S&SPick=20170&cosponId=24413.

[9] While the trial court will be statutorily estopped from including restitution as a component of Appellant's direct sentence on remand, we note that the provisions of 42 Pa.C.S. § 9754(c)(8) may offer an alternative to restitution ordered as a condition of a direct sentence. Under that subparagraph, "[t]he court may as a condition of its order require the defendant to make restitution of the fruits of his crime or to make reparations, in an amount he can afford to pay, for the loss or damage caused thereby." 42 Pa.C.S. § 9754(c)(8); **see also Harner**, **supra** at 706 ("Restitution may also be imposed as a condition of probation and, under such circumstances, the courts are traditionally and properly vested with a broader measure of discretion in fashioning conditions of probation appropriate to the circumstances of the individual case."). Including restitution as a probation requirement would

- 17 -

Order reversed. Sentence vacated. Case remanded with instructions.

Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/01/2019

---

afford the trial court greater flexibility, as it is "considerably different than the language of 18 Pa.C.S. § 1106 which permits restitution only for losses that are a direct result of the crime." *Id.* at 707 n.3. If the trial court opts to proceed under § 9754(c)(8), it would have a concomitant obligation "to determine what loss or damage has been caused, and what amount of restitution Appellant can afford to pay, and how it should be paid." *Id.* at 707.