J-A21021-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
      :       PENNSYLVANIA
      :
v.       :
      :
      :
KWESI HUDSON       :
      :
      Appellant   :   No. 351 EDA 2019

Appeal from the Judgment of Sentence Entered August 13, 2018
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0002814-2017,
CP-15-CR-0004122-2017

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
      :       PENNSYLVANIA
      :
v.       :
      :
      :
KWESI HUDSON       :
      :
      Appellant   :   No. 553 EDA 2019

Appeal from the Judgment of Sentence Entered August 13, 2018
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0004122-2017

BEFORE: BOWES, J., OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OLSON, J.:         **FILED AUGUST 17, 2020**

Appellant, Kwesi Hudson, appeals from the judgment of sentence entered on August 13, 2018, as made final by the denial of his post-sentence motion on January 15, 2019. We vacate Appellant's judgment of sentence and guilty plea and remand.

On August 13, 2018, Appellant entered a negotiated guilty plea to two counts of robbery and one count of burglary.[1] During the guilty plea colloquy, Appellant admitted to the following:

> On [January 27, 2017,] at 6:43 [a.m., Appellant] forced his way into the Rite-Aid Pharmacy on Phoenixville Pike in West Goshen Township . . . before the pharmacy was open for business. His intent in forcing his way in was to rob the pharmacy.
>
> He punched the store manager, who had just opened the front door, and forced [the manager] to provide him with over $4,000[.00] of Rite-Aid's money.
>
> While [Appellant] was carrying what appeared to be a semiautomatic pistol, his conduct in the presence of what appeared to be a handgun caused the store manager to fear that he was going to be killed.
>
> After getting the Rite-Aid's money, [Appellant] struck the store manager again, knocking [the manager] to the floor, before departing the Rite-Aid with Rite-Aid's money.
>
> . . .
>
> [On March 26, 2017,] at 9:29 [p.m., Appellant] walked into the Walgreens pharmacy on East Baltimore Pike in East Marlborough Township . . . , accosted the clerk who was in the store and forced her to the store office where the store supervisor was located.
>
> [Appellant] was carrying what appeared to be a semiautomatic pistol. He forced the store supervisor to provide him from the store safe with over $2,000[.00] of [Walgreens'] money.
>
> Both the clerk and the store supervisor feared that they would be killed.

_____

[1] 18 Pa.C.S.A. §§ 3701(a)(1)(ii) and 3502(a)(3), respectively.

> After getting Walgreens' money from the safe, [Appellant] forced the clerk to provide him with cartons of cigarettes before departing the Walgreens through the door that he had entered to commit the robbery.

N.T. Guilty Plea Hearing, 8/13/18, at 5-7.

The trial court accepted Appellant's plea and immediately sentenced Appellant to serve the negotiated sentence: a term of ten to 20 years in prison for the Rite-Aid robbery, plus $4,199.69 in restitution to Rite Aid; a concurrent term of ten to 20 years in prison for the Walgreens robbery, plus $2,901.00 in restitution to Walgreens; and, a concurrent term of two to 20 years in prison for the burglary conviction. *See id.* at 9-12; *see also* Written Guilty Plea Form, 8/13/18, at 1-4.

On August 22, 2018, Appellant filed a timely post-sentence motion, alleging that the above-quoted restitution provisions of his sentence were illegal, as Rite-Aid and Walgreens are business entities and are not entitled to restitution under the relevant statutory scheme. *See* Appellant's Post-Sentence Motion, 8/22/18, at 1-3. The trial court denied Appellant's

post-sentence motion on January 15, 2019 and Appellant filed timely notices of appeal.[2, 3]   Appellant raises the following for our consideration:

> Was the order for restitution unconstitutional pursuant to the Pennsylvania Supreme Court's holding in **Commonwealth v. Veon**, 150 A.3d 435 (Pa. 2016)?   Does the restitution requirement imposed by [the] judgment of sentence constitute unconstitutional implementation of 18 Pa.C.S.A. § 1106?

Appellant's Brief at 4.

---

[2] On November 26, 2019, we entered an order that stayed the current appeal pending the *en banc* resolution of **Commonwealth v. Johnson**, ___ A.3d ___, 2020 WL 3869723 (Pa. Super. 2020), which concerned the proper application of **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018) in light of **Commonwealth v. Creese**, 216 A.3d 1142 (Pa. Super. 2019) (reading **Walker** as a mandate to quash appeals where the notice of appeal contained more than one trial court docket number).  On July 9, 2020, the *en banc* panel in **Johnson** overruled **Creese**.  Hence, we lift the stay as we may now reach the merits of the current appeal.

[3] Appellant filed a timely post-sentence motion on August 22, 2018.  The trial court had 120 days to decide the post-sentence motion, but when it failed to decide the motion within that period, the motion was deemed denied by operation of law on December 21, 2018.  **See** Pa.R.Crim.P. 720(B)(3)(a).  When a post-sentence motion is deemed denied, the clerk of courts must enter an order deeming the motion denied on behalf of the trial court and serve copies on the parties.  **See** Pa.R.Crim.P. 720(B)(3)(c).  A notice of appeal must be filed within 30 days of the entry of the order denying the post-sentence motion by operation of law.  **See** Pa.R.Crim.P. 720(A)(2)(b).  Here, the clerk of courts failed to enter an order disposing of Appellant's post-sentence motion.  Instead, the trial court entered an opinion and order denying relief on January 15, 2019, outside the 120-day period, and Appellant filed a notice of appeal within 30 days of that order.  This Court has previously determined that there is a breakdown in the judicial system when the clerk of courts fails to enter a deemed denied order under Rule 720 and, thus, we may consider the merits of Appellant's current appeal.  **See Commonwealth v. Braykovich**, 664 A.2d 133, 138 (Pa. Super. 1995); **Commonwealth v. Patterson**, 940 A.2d 493, 498-499 (Pa. Super. 2007).

"In the context of criminal proceedings, it is well-settled that an order of restitution is not simply an award of damages, but, rather, a sentence." *Commonwealth v. McKee*, 38 A.3d 879, 880–881 (Pa. Super. 2012) (quotations and citations omitted). Further, as our Supreme Court has held, "restitution is a creature of statute and, without express legislative direction, a court is powerless to direct a defendant to make restitution as part of a sentence." *Commonwealth v. Harner*, 617 A.2d 702, 704 (Pa. 1992).

Regarding challenges to the imposition of restitution, we have held:

> the appellate courts have drawn a distinction between those cases where the challenge is directed to the trial court's [statutory] authority to impose restitution and those cases where the challenge is premised upon a claim that the restitution order is excessive. When the court's authority to impose restitution is challenged, it concerns the legality of the sentence; however, when the challenge is based on excessiveness, it concerns the discretionary aspects of the sentence.

*Commonwealth v. Oree*, 911 A.2d 169, 173 (Pa. Super. 2006); *see also In re M.W.*, 725 A.2d 729, 731 (Pa. 1999) (holding that, when an issue "centers upon [the court's] statutory authority" to impose restitution, as opposed to the "court's exercise of discretion in fashioning" restitution, the issue implicates the legality of the sentence).

On appeal, Appellant claims that the trial court lacked the statutory authority to order him to pay restitution to the two business entities, Rite-Aid and Walgreens. Appellant's Brief at 11. This claim implicates the legality of Appellant's sentence. *See Oree*, 911 A.2d at 173. Since Appellant's

challenge goes to the legality of his sentence, "our standard of review [regarding his challenge] is *de novo* and our scope of review is plenary." ***Commonwealth v. Saunders***, 946 A.2d 776, 787 n.12 (Pa. Super. 2008).

In this case, the trial court imposed restitution as a part of Appellant's direct sentence, in accordance with 18 Pa.C.S.A. § 1106. ***See*** Trial Court Opinion, 1/22/19, at 1-4. In relevant part, at the time Appellant committed his crimes, Section 1106(a) read:

> **(a) General rule.**--Upon conviction for any crime wherein property has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime . . . the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor.
>
> . . .
>
> **(c) Mandatory restitution.**—
>
> (1) The court shall order full restitution:
>
> (i) Regardless of the current financial resources of the defendant, so as to provide the victim with the fullest compensation for the loss. . . .

18 Pa.C.S.A. § 1106 (effective January 31, 2005 to October 23, 2018).[4]

---

[4] On October 24, 2018, the legislature amended Section 1106. Nevertheless, as we have held, the amendments are not retroactive. ***See***, ***e.g.***, ***Commonwealth v. Hunt***, 220 A.3d 582, 586 (Pa. Super. 2019) ("[w]e decline to give retroactive effect to the October 24, 2018 amendments to § 1106").

The term "property," as used in Section 1106, means "[a]ny real or personal property, including currency and negotiable instruments, **of the victim**." 18 Pa.C.S.A. § 1106(h) (emphasis added).[5] Given that the term "property" refers to the personal property of "the victim," we must examine the definition of the term "victim" to determine whether the currency taken by Appellant in this case can properly be the subject of a restitution order issued pursuant to Section 1106.

At the time of the crimes, Section 1106(h) declared that the definition of the term "victim" was:  "[as that term is] defined in section 479.1 of the act of April 9, 1929 (P.L. 177, No. 175), known as The Administrative Code of 1929."  18 Pa.C.S.A. § 1106(h) (effective January 31, 2005 to October 23, 2018).  Prior to its repeal, Section 479.1 defined the term "victim," in relevant part, as:  "[a] person against whom a crime is being or has been perpetrated or attempted."  **See Commonwealth v. Holmes**, 155 A.3d 69, 80 (Pa. Super. 2017) (*en banc*) (opinion in support of affirmance).

_____

In this case, Appellant committed his offenses in 2017 – prior to the effective date of the amendments.  Thus, in this appeal, we apply the version of Section 1106 that existed at the time Appellant committed his offenses.

[5] The Commonwealth argues that Section 1106(a) does not require a "victim" when property is stolen.  **See** Commonwealth's Brief at 12-13.  However, since the term "property," as used in Section 1106, means "[a]ny real or personal property, including currency and negotiable instruments, **of the victim**," the Commonwealth's argument is meritless.  18 Pa.C.S.A. § 1106(h) (emphasis added).

Nevertheless, as we have explained: "the definition of 'victim' set forth in the Administrative Code of 1929 was itself repealed in 1998, and the operative definition of the term 'victim' under the Crime Victims Act ('CVA') at 18 P.S. § 11.103 took its place." *Commonwealth v. Hunt*, 220 A.3d 582, 588-589 (Pa. Super. 2019). As is relevant to the case at bar, the CVA defines a "victim" as "[a] direct victim."[6] 18 P.S. § 11.103. The CVA then defines a

_____

[6] The CVA defines a "victim" as:

> (1) A direct victim.
>
> (2) A parent or legal guardian of a child who is a direct victim, except when the parent or legal guardian of the child is the alleged offender.
>
> (3) A minor child who is a material witness to any of the following crimes and offenses under 18 Pa.C.S. (relating to crimes and offenses) committed or attempted against a member of the child's family:
>
>> Chapter 25 (relating to criminal homicide).
>>
>> Section 2702 (relating to aggravated assault).
>>
>> Section 3121 (relating to rape).
>
> (4) A family member of a homicide victim, including stepbrothers or stepsisters, stepchildren, stepparents or a fiance, one of whom is to be identified to receive communication as provided for in this act, except where the family member is the alleged offender.

18 P.S. § 11.103.

Obviously, neither Rite-Aid nor Walgreens is "a parent or legal guardian," "a minor child," or "a family member of a homicide victim." Therefore, we will

"direct victim" as: "[a]n individual against whom a crime has been committed or attempted and who as a direct result of the criminal act or attempt suffers physical or mental injury, death or the loss of earnings under this act." *Id.*

In *Hunt*, this Court held that the definition of "victim" in Section 479.1 of the Administrative Code of 1929 and Section 11.103 of the CVA are not "similar enough so as to render them interchangeable" – and, thus, the definition of "victim" in Section 479.1 of the Administrative Code of 1929 did not survive the 1998 repeal. *Hunt*, 220 A.3d at 589; *see also* 18 P.S. § 11.5102 (declaring that the CVA "is a codification of the statutory provisions repealed in section 5103 and, except where clearly different from current law, shall be deemed to be a continuation of prior law"); 1 Pa.C.S.A. § 1962 ("[w]henever a statute is repealed and its provisions are at the same time reenacted in the same or substantially the same terms by the repealing statute, the earlier statute shall be construed as continued in active operation"). Therefore, in *Hunt*, this Court held that "the definition of 'victim' under the CVA that entered force in 1998 is the sole definition for our purposes under § 1106." *Hunt*, 220 A.3d at 590.

As applied to the case at bar, the only way the trial court had statutory authority to order Appellant to pay Rite-Aid and Walgreens restitution for the stolen property is if the court determined that those business entities fell

---

only discuss whether the corporations qualify as "direct victims" under the CVA.

under the CVA's definition of the term "direct victim." However, in **Hunt**, this Court specifically held that "the definition of 'direct victim' under the CVA (and, consequently, the definition of 'victim' under the pre-amendment version of § 1106) does not include corporate entities." **Id.** at 591. Therefore, in accordance with **Hunt**, we conclude that the trial court did not have statutory authority to sentence Appellant to pay restitution to Rite-Aid and Walgreens, that this portion of Appellant's sentence is illegal, and that Appellant's judgment of sentence must, therefore, be vacated. **See also Commonwealth v. Rivera**, 154 A.3d 370, 381 (Pa. Super. 2017) ("[o]ur cases clearly state that a criminal defendant cannot agree to an illegal sentence, so the fact that the illegality was a term of his plea bargain is of no legal significance") (quotations and citations omitted).

Further, although Appellant maintains otherwise, the restitution portion of Appellant's sentence was clearly part of the negotiated plea in this case. To be sure, the written guilty plea form expressly declares that, in exchange for Appellant's pleas of guilty, the Commonwealth would recommend: a sentence of ten to 20 years in prison for the first robbery count, plus restitution to Rite-Aid in the amount of $4,199.67; a concurrent sentence of ten to 20 years in prison on the second robbery count, plus restitution to Walgreens in the amount of $2,901.00; and, a concurrent sentence of two to 20 years in prison on the burglary count. Written Guilty Plea Form, 8/13/18, at 3-4. The trial court accepted Appellant's guilty plea and sentenced Appellant in accordance with the negotiated terms. Therefore, our vacation of the restitution portion

of Appellant's sentence fundamentally strips the Commonwealth of the benefit of its bargain. This requires that we vacate Appellant's guilty plea and return the case to its status prior to the entry of Appellant's guilty plea. Indeed, this aspect of the case is controlled by our opinion in **Commonwealth v. Melendez-Negron**, 123 A.3d 1087 (Pa. Super. 2015).

In **Melendez-Negron**, Melendez-Negron was charged with a variety of drug-related crimes. In accordance with a negotiated plea agreement, Melendez-Negron pleaded guilty to possession of a controlled substance with the intent to deliver ("PWID") and, on November 15, 2013, the trial court sentenced him to serve a term of five to ten years in prison, pursuant to the mandatory minimum sentencing statute found at 42 Pa.C.S.A. § 9712.1. **Id.** at 1089.

Melendez-Negron did not file a direct appeal from his judgment of sentence. However, Melendez-Negron filed a timely PCRA petition, where he claimed that "his sentence was unconstitutional, and therefore illegal, in light of [**Alleyne v. United States**, 570 U.S. 99 (2013)]." **Id.** Melendez-Negron requested that the PCRA court vacate his sentence and remand the case for resentencing; he did not request that the PCRA court permit him to withdraw his guilty plea. **Id.** at 1091 n.7.

The PCRA court granted Melendez-Negron's PCRA petition, vacated his sentence, and remanded the case for resentencing. The Commonwealth filed a notice of appeal and claimed, among other things, that the PCRA court erred when it merely vacated Melendez-Negron's sentence and remanded the case

for resentencing. *Id.* at 1090. According to the Commonwealth, if the PCRA court were going to grant Melendez-Negron relief, the PCRA court was required to vacate Melendez-Negron's entire guilty plea and "return[ the case] to the *status quo* prior to the entry of the guilty plea." *Id.* at 1091. As the Commonwealth argued: "in consideration of agreeing to a five-to-ten-year period of incarceration, [the Commonwealth] gave up the opportunity to seek sentences on the drug paraphernalia and small amount of marijuana charges. By simply allowing resentencing pursuant to the sentencing guidelines, the Commonwealth . . . [lost] the benefit of its bargain." *Id.* at 1092 (quotations and citations omitted).

We agreed with the Commonwealth and concluded that – even though Melendez-Negron did not request that his guilty plea be vacated – the PCRA court erred when it failed to vacate the entirety of Melendez-Negron's guilty plea and restore the case to its status prior to the entry of the guilty plea. *Id.* at 1091-1092.

Within our opinion, we analogized the case to our prior opinions in **Commonwealth v. Hodges**, 789 A.2d 764 (Pa. Super. 2002) and **Commonwealth v. Lenhoff**, 796 A.2d 338 (Pa. Super. 2002). In both **Hodges** and **Lenhoff**, the defendants, the Commonwealth, and the trial court judges were all under the mistaken belief that the defendants were subject to more severe statutory maximum sentences than that which the trial court had the authority to impose. **See Hodges**, 789 A.2d at 765 (the parties mistakenly believed that the defendant was subject to the death penalty

when, "because of [the defendant's] age, the death penalty was never applicable"); *Lenhoff*, 796 A.2d at 342-343 (the parties mistakenly believed that the defendant committed a second-degree felony, when the defendant actually committed a third-degree felony). The defendants then pleaded guilty in order "to avoid [a] sentence . . . [that] the [trial] court did not have the legal authority to impose." *Lenhoff*, 796 A.2d at 342-343. As we held in both *Hodges* and *Lenhoff*, the defendants were entitled to withdraw their guilty pleas, as "[t]he entire process of [the] plea negotiations . . . was affected by [the] . . . [statutory maximum sentencing calculation] error." *Hodges*, 789 A.2d at 767.

Utilizing this precedent, the *Melendez-Negron* Court held:

> This case is fundamentally akin to *Hodges* and *Lenhoff*; where it differs is that it is the Commonwealth, not the defendant, who argues that it is being deprived of the benefit of its bargain. We see no reason why the rationale of *Hodges* and *Lenhoff* should be limited to criminal defendants. Indeed, both parties to a negotiated plea agreement are entitled to receive the benefit of their bargain. *See Commonwealth v. Townsend*, 693 A.2d 980, 983 (Pa. Super. 1997) ("[W]here the parties have reached a specific sentencing agreement . . . the court cannot later modify the terms of the agreement without the consent of the Commonwealth" because this would deny the Commonwealth the full benefit of the agreement which it reached . . . and the defendant, in turn, would receive a windfall."); *Commonwealth v. Coles*, 530 A.2d 453 (Pa. Super. 1987) (holding that granting defendant's motion to modify negotiated plea sentence stripped Commonwealth of the benefit of its bargain). . . . Accordingly, we conclude that the shared misapprehension that the mandatory minimum sentence required by [42 Pa.C.S.A. § 9712.1] applied to Melendez–Negron tainted the parties' negotiations at the outset. As in *Hodges* and *Lenhoff*, the parties' negotiations

began from an erroneous premise and therefore were fundamentally skewed from the beginning. Thus, while we affirm the PCRA court's order vacating Melendez–Negron's sentence, we further vacate his guilty plea and remand for further proceedings.

***Melendez-Negron***, 123 A.3d at 1093-1094.

The same is true in the case at bar. In this case, Appellant and the Commonwealth entered into plea negotiations under "the shared misapprehension" that Appellant could lawfully be sentenced to pay restitution to Rite-Aid and Walgreens. ***Id.*** This misapprehension "tainted the parties' negotiations at the outset." ***Id.*** Therefore, consistent with ***Melendez-Negron***, we conclude that – since "the parties' negotiations began from [the] erroneous premise" that Appellant could be sentenced to pay restitution to the corporate entities – we must vacate Appellant's guilty plea and restore the case to its status prior to the entry of the plea. ***Id.***

Judgment of sentence vacated. Guilty plea vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/17/20

- 14 -