**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RAKEEMA HARRIS | : | |
| | : | |
| Appellant | : | No. 1898 EDA 2020 |

Appeal from the Judgment of Sentence Entered September 11, 2020
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0006348-2016

BEFORE: BOWES, J., OLSON, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.: **FILED SEPTEMBER 13, 2021**

Rakeema Harris appeals from the judgment of sentence entered in the Delaware County Court of Common Pleas following probation revocation pursuant to **Gagnon II**[1]. At sentencing, Harris was ordered to make monthly restitution payments to the Delaware County Housing Authority. On appeal, Harris asserts that both her initial sentence as well as her corresponding post-revocation sentence are illegal. Given this Court's holding in **Commonwealth v. Hunt**, 220 A.3d 582 (Pa. Super. 2019), we are constrained to agree. Accordingly, we vacate not only the appealed-from judgment of sentence, but additionally, we vacate Harris's underlying guilty plea.

In summary, Harris was charged with various theft-related offenses

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] **Gagnon v. Scarpelli**, 411 U.S. 778 (1973).

stemming from the unlawful receipt of housing and utility assistance payments, totaling into the six figures, from the Delaware County Housing Authority over the course of seven years. Harris's acquisition of those payments was illegal due to her failure to disclose certain financial assets to the Housing Authority, namely her various bank accounts and her purchase of two homes.

Ultimately, Harris entered a negotiated plea of *nolo contendre* to the singular offense of tampering with public records. **See** 18 Pa.C.S.A. § 4911(a)(2). The agreed-upon sentence that followed consisted of three years of probation, a DNA sample, and restitution payments approaching almost one hundred thousand dollars directed to the Housing Authority.

Approximately three years later and while still on probation, Harris was found to be in violation of her probation's conditions because, at that point, she had only paid roughly three percent of the restitution amount even though her initial probation term was approaching expiration. As such, Harris was resentenced to three additional years of probation, which, much like the first sentencing scheme, required monthly payments to the Housing Authority.[2]

---

[2] It is unclear whether these latter restitution payments were ordered pursuant to a direct sentence, **see** 18 Pa.C.S.A. § 1106, or as a condition of probation, **see** 42 Pa.C.S.A. § 9754, which, as indicated *infra*, can have distinguishable legal consequences. Initially, the court sentenced Harris to "three years of probation." Sentencing Transcript, 7/31/17, at 6. Furthermore, it indicated that "[a] DNA sample will be required, [with] restitution [also provided] to the Housing Authority in the amount of $98,198." **Id**. On the corresponding certificate of imposition of judgment of sentence, restitution
*(Footnote Continued Next Page)*

After the sentencing court issued its judgment of sentence pursuant to Harris's probation violation, Harris timely appealed its decision. The relevant parties have complied with the dictates of Pa.R.A.P. 1925, and this case's sole issue is ripe for our disposition.

On appeal, Harris asks this Court to consider the question of:

1. [Was] the order of restitution imposed as part of the initial sentence and again at revocation proceedings … illegal, since the lower court lacked authority – under the version of 18 Pa.C.S.[A.] § 1106 in effect at the time of the alleged conduct – to award restitution to the Delaware County Housing Authority, a government entity, and therefore erred in revoking [Harris's] probation for allegedly failing to comply with that illegal sentence?

Appellant's Brief, at 10.

Preliminarily, we note that the Commonwealth concedes that Harris's initial and post-revocation judgments of sentence are illegal. **See** Appellee's Brief, at 7. It, too, also suggests that vacation of her underlying guilty plea is necessary.

---

appears to be inextricably tied to her direct sentence. **See** Judgment of Sentence, 7/31/17; **see also** Trial Court Opinion, 1/25/21, at 3 (analyzing the initial order of restitution as part of Harris's direct sentence, pursuant to Section 1106).

However, following her probation violation, **see** 18 Pa.C.S.A. § 1106(f), the new certificate of imposition of judgment of sentence directed Harris to make "monthly payments towards … restitution" on the form's "Other" line, with nothing specifically written in the restitution block. Judgment of Sentence, 9/11/20. Because we ultimately hold that Harris's initial sentence was illegal, the legal import of restitution ordered in her post-revocation judgment of sentence is a nullity.

When reviewing a challenge to a restitution order, we are guided by the following standard of review:

> In … criminal proceedings, an order of restitution is not simply an award of damages, but, rather, a sentence. As such, an appeal from an order of restitution based upon a claim that a restitution order is unsupported by the record challenges the legality, rather than the discretionary aspects, of sentencing. Accordingly, the determination as to whether the trial court imposed an illegal sentence is a question of law; our standard of review in cases dealing with questions of law is plenary. This case will also necessarily call upon us to engage in statutory construction, which similarly presents a pure question of law and also implicates the legality of ... sentence. Thus, our standard of review is *de novo* and our scope of review is plenary.

*Hunt*, 220 A.3d at 585 (internal citations and quotation marks omitted) (brackets removed).

All parties agree that the dates of Harris's illicit activities establish that any valid restitution order must be issued pursuant to the older version of Section 1106[3]. In relevant part, the prior version of Section 1106 states:

> **(a)** **General rule.**—Upon conviction for any crime wherein ... the victim suffered personal injury directly resulting from the crime, the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor.
>
> * * *
>
> **(c) Mandatory restitution.**—
>
> (1) The court shall order full restitution:
>
> (i) Regardless of the current financial resources of the

---

[3] The events that led to Harris's conviction occurred before October 24, 2018, Section 1106's amendment date. **See Hunt**, 220 A.3d at 586.

> defendant, so as to provide the victim with the fullest compensation for the loss.
>
> * * *
>
> **"Victim."** As defined in section 479.1 of the act of April 9, 1929 (P.L. 177, No. 175), known as The Administrative Code of 1929. The term includes the Crime Victim's Compensation Fund if compensation has been paid by the Crime Victim's Compensation Fund to the victim and any insurance company that has compensated the victim for loss under an insurance contract.

18 Pa.C.S. § 1106(a), (c), and (h) (repealed Oct. 24, 2018, P.L. 891, No. 145, § 1, effective Jan. 31, 2005) (internal footnote omitted).

While Section 1106 references "section 479.1," in order to provide the definition of "Victim," that latter section has since been recodified in the Crime Victims Act, 18 P.S. §§ 11.101, *et seq*. **See Commonwealth v. Veon**, 150 A.3d 435, 449 (Pa. 2016). The Act, *inter alia*, designates a victim as "[a] direct victim." 18 P.S. § 11.103. And, as expounded upon by our Supreme Court, "[a] 'direct victim' is defined by the same section as '[a]n *individual* against whom a crime has been committed or attempted and who as a direct result of the criminal act or attempt suffers *physical or mental injury*, *death* or the *loss of earnings* under this act.'" **Veon**, A.3d at 449 (emphasis in original) (formatting slightly altered). The **Veon** Court then went on to conclude that "victim" exclusively meant "human being." **See id**., at 454 ("Every relevant noun unequivocally describes a human being, not a government agency, and nowhere else is there a relevant definition that persuades us to broaden the common understanding of these words.").

- 5 -

In applying ***Veon***, this Court determined that

the inter-related definitions of "direct victim," "individual," and "natural person" pursuant to the pre-amendment version of § 1106 *do not* include corporate entities.... Such a conclusion is necessitated by a plain reading of these statutes, and has the additional virtue of giving full weight to the Supreme Court's discussion of these same provisions in ***Veon***.

***Hunt***, 220 A.3d at 591 (internal footnotes omitted) (emphasis in original).

While ***Hunt*** was decided within the context of a restitution order that required direct payments to a corporate entity, it would follow that a restitution order mandating the same to a local governmental agency, such as the Delaware County Housing Authority, would result in the same legal conclusion. As neither are "natural persons" within the meaning of Section 1106's pre-amendment language, neither can be the recipient of restitution-based funds ordered as a result of a direct sentence.

Here, under both sets of circumstances, the sentencing court ordered Harris to pay restitution to the Delaware County Housing Authority, which is decidedly not a "victim" under the pre-amendment Section 1106. In ***Commonwealth v. Milhomme***, this Court identified that if a defendant's original sentence is illegal but he or she subsequently violates his or her probation related to that sentence, the new post-revocation sentence is, too, illegal. ***See*** 35 A.3d 1219, 1222 (Pa. Super. 2011). Therefore, given that both of Harris's sentences, the one ordered following her probation revocation hearing as well as her initial sentence, involve payment to a victim that is not cognizable under Section 1106, her two sentences are inherently illegal and

must be vacated. However, in making this determination, our inquiry does not end there.

Harris's first sentence was the product of negotiations between her and the Commonwealth. Distilled down, in return for her restitution payments, the Commonwealth withdrew several felonies it intended to bring to trial. Clearly, then, the two parties entered into negotiations under the shared misapprehension that restitution to the Delaware County Housing Authority was legally permissible. It strains credulity to believe that this misunderstanding can be divorced from the underlying negotiations or resultant sentence, especially as that sentence is almost exclusively predicated on those restitution payments.

Because Harris's negotiated plea agreement is inseparably tied to what we have determined to be illegal restitution payments, there is simply no way to vacate the judgments of sentence without affecting the validity of the underlying plea agreement. ***See Commonwealth v. Melendez-Negron***, 123 A.3d 1087, 1094 (Pa. Super. 2015) (establishing that without the Commonwealth's consent, a court cannot later modify the terms of a plea agreement as it would "deny the Commonwealth the full benefit of the agreement which it reached") (citation omitted). We, therefore, must vacate not only the post-revocation and original judgments of sentence, but also, we are constrained to vacate Harris's underlying guilty plea.

Notwithstanding our current determination, we note that had the trial

court originally ordered restitution as a condition of probation, pursuant to 42 Pa.C.S.A. § 9754(c)(8) (effective through December 17, 2019), the result of this case may very well have been different. *See Commonwealth v. Hall*, 80 A.3d 1204, 1213 (Pa. 2013) (indicating that "[n]othing in the plain language of Section 9754 either specifies or limits the persons who may be proper subjects of restitution or reparation as a condition of probation"); *see also Commonwealth v. Wydo-Streit*, 2019 WL 3719529 (Pa. Super. 2019) (non-precedential decision) (observing that the trial court ordered the defendant to pay restitution to a municipality as a condition of probation. On appeal, this Court held that Section 9754(c)(8) does not expressly limit the individuals or entities that may receive restitution as a condition of a defendant's probation, and nothing prohibited the trial court from ordering that the defendant pay restitution to a municipality as a condition of her probation. Accordingly, the at-issue restitution order was proper).[4]

Judgment of sentence vacated. Guilty plea vacated. Case remanded for further proceedings. Jurisdiction relinquished.

---

[4] *Wydo-Streit* was filed on August 7, 2019. As a non-precedential decision filed after May 1, 2019, *Wydo-Streit* may be cited for its persuasive value. *See* Pa.R.A.P. 126(b).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/13/2021