J-S52031-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MARK STARGELL | : | |
| | : | |
| Appellant | : | No. 3243 EDA 2019 |

Appeal from the Judgment of Sentence Entered October 16, 2019
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0006695-2018

BEFORE:   PANELLA, P.J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED:  JANUARY 11, 2021**

Appellant Mark Stargell appeals the judgment of sentence entered by the Court of Common Pleas of Montgomery County after the trial court found Appellant guilty of burglary, criminal trespass, theft by unlawful taking, and unauthorized use of a motor vehicle.  Appellant argues the trial court abused its discretion in admitting prior bad act evidence and in imposing an illegal restitution order.  After careful review, we affirm in part, but vacate the restitution portion of Appellant's sentence.

The Commonwealth charged Appellant with the aforementioned offenses in connection with allegations that in the early morning hours of July 15, 2018, Appellant burglarized the Queen Appliance Store located at 600 South Henderson Road, King of Prussia, Pennsylvania, and the Queen

_____

[*] Former Justice specially assigned to the Superior Court.

Appliance Warehouse located at 41 South 2nd Avenue in Phoenixville, Pennsylvania. The Commonwealth alleged that Appellant broke into a key lock box at the Queen Appliance Store in King of Prussia, stole a work truck from that location, and proceeded thereafter to the Queen Appliance Warehouse in Phoenixville and stole over $10,000.00 of new appliances. The stolen work truck was later found abandoned in Philadelphia.

Prior to trial, the prosecution filed a pretrial motion seeking to admit evidence of Appellant's prior bad acts relating to his employment pursuant to Pa.R.E. 404(b). The Commonwealth indicated that Appellant, previously employed by Queen Appliance as a delivery driver, was terminated on July 9, 2018, just days before the burglaries were committed. The prosecution asserted that Appellant was terminated due to various reasons, including using a company truck for personal use and taking the company truck out longer than permitted. The Commonwealth asserted that Appellant's termination was relevant for various reasons, including to establish motive as well as a common plan. Notes of Testimony (N.T.), 7/9/19, at 9-10.

After hearing argument on the prosecution's motion at the beginning of trial, the trial court made a preliminary ruling that the evidence of Appellant's termination would be admissible subject to a proper foundation. N.T. at 14.

Appellant proceeded to a bench trial at which the prosecution presented the testimony of Eric Soloff, the general manager of Queen Appliance. Soloff indicated that a surveillance video at the Queen Appliance store in King of Prussia recorded two perpetrators breaking into a lock box that contained keys

to all the Queen Appliance delivery vehicles (including the stolen truck) and the keys to Queen Appliance warehouse locations. N.T. at 27-31. Soloff indicated that delivery team members are required to drop their keys in a slot in the lockbox at the end of their shift. N.T. at 31-32, 39. However, Soloff testified that this information concerning the location and contents of the lockbox is "uncommon for anyone outside of Queen Appliance" to know as the lockbox is not in the store showroom. N.T. at 32.

The prosecution introduced the surveillance video into evidence and Soloff testified that he could not identify one of the perpetrators, but deduced that the other perpetrator was Appellant. N.T. at 27-29. Soloff noticed that the individual was short in stature when compared to the height of the truck. N.T. at 27-28. In addition, the perpetrator carried a backpack, an accessory that Appellant commonly utilized. N.T. at 26-29. Soloff also observed that the perpetrator walked similarly to Appellant, who characteristically walked with his hands in his pockets. N.T. at 28.

Soloff also shared that the perpetrator who drove the truck would have had to have specialized knowledge on how to operate the commercial vehicle. N.T. at 36. While employed at Queen Appliance, Appellant was responsible for operating the stolen truck or one identical to it. N.T. at 73. When the stolen truck was ultimately recovered, the GPS device had been unplugged. N.T. at 67.

Soloff also noted that Queen Appliance personnel noticed that the same truck's GPS system had similarly been disconnected a week prior to the

burglaries, when the truck was cleaned out in preparation for Appellant's termination. N.T. at 67. Appellant admitted to Queen Appliance's delivery manager that he had disconnected the GPS system because he didn't like being tracked where he was going. N.T. at 73.

Soloff also pointed out that Appellant had been terminated from Queen Appliance the week prior to the burglaries in question. N.T. at 28-29, 67-69. When the prosecutor began to discuss the reasons for Appellant's termination, the trial court sustained defense counsel's objection. N.T. at 69.

The prosecution presented cell phone records that suggested that Appellant was physically present near the particular Queen Appliance store and warehouse at the time of the crime. N.T. at 75-76. While the subscriber name for the phone near these locations was Appellant's mother, Faustina Stargell, Soloff testified that Appellant listed this particular number on his employment paperwork. *Id*. Moreover, Queen Appliance's delivery manager would contact Appellant at that number and had no other contact numbers for Appellant. *Id*.

On cross examination, defense counsel asked Soloff about an email he had sent to the detectives investigating this case, indicating that they should question former Queen Appliance employee, DeAndre McKinley. Defense counsel also elicited testimony from Soloff that a previous delivery manager had accused McKinley of stealing a refrigerator. N.T. at 108-109.

Thereafter, on rebuttal, the prosecutor questioned Soloff further about his suspicion about McKinley's possible involvement as a perpetrator of the

crimes at issue. Soloff indicated that although McKinley had been previously terminated from Queen Appliance, Appellant brought McKinley to work on the Saturday before Appellant's own termination, and the two men spent a significant amount of untracked time in a company truck. N.T. at 117-119. When defense counsel objected to this line of questioning, the trial court gave the prosecutor latitude to question Soloff about his suspicions regarding McKinley as defense counsel had opened the door to this topic on cross-examination. N.T. at 118.

At the conclusion of trial, the trial court convicted Appellant of burglary, criminal trespass, theft by unlawful taking (two counts), unauthorized use of a motor vehicle, but acquitted Appellant of receiving stolen property. On October 16, 2019, the trial court sentenced Appellant to concurrent terms of twelve to thirty months' imprisonment for the burglary and criminal trespass charges along with a consecutive two years' probation for theft by unlawful taking, and a consecutive period of one year probation for unauthorized use of a vehicle. As a part of his direct sentence, the trial court ordered Appellant to pay Queen Appliance $11,924.46. This timely appeal followed.

Appellant raises the following questions for review on appeal:

1. Did the court below abuse its discretion when it allowed testimony of prior bad acts to be admitted as evidence?

2. Must the award the restitution be vacated where the company to which restitution is to be paid does not fit the definition of a "victim" under the applicable statute?

Appellant's Brief, at 2 (reordered for ease of review).

Appellant first challenges the trial court's decision to allow the prosecution to admit evidence regarding Appellant's termination from Queen Appliance prior to the crimes charged and the reasons for his termination. In reviewing similar claims, this Court has held:

> [o]ur standard of review for a trial court's evidentiary rulings is narrow, as the admissibility of evidence is within the discretion of the trial court and will be reversed only if the trial court has abused its discretion." **Commonwealth v. Melvin**, 103 A.3d 1, 35 (Pa.Super. 2014). The Pennsylvania Rules of Evidence define "relevant evidence" as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence" as long as "the fact is a consequence in determining the action." Pa.R.E. 401(a)-(b). Relevant evidence is admissible, and irrelevant evidence is inadmissible. **See** Pa.R.E. 402. Even relevant evidence may be excluded if its probative value is outweighed by prejudice. **See** Pa.R.E. 403.

**Commonwealth v. Hernandez**, 230 A.3d 480, 489 (Pa.Super. 2020).

Specifically, with respect to the admission of prior bad act evidence, we are guided by the following principles:

> The general threshold for admissibility of evidence is relevance. Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence to determining the action. Pa.R.E. 401. All relevant evidence is admissible, subject to certain exceptions. Pa.R.E. 402. Relevant to this claim, evidence of another crime, wrong, or other act is not admissible to prove a person's character or to show that, on a particular occasion, the person acted in accordance with that character. Pa.R.E. 404(b)(1). However, such evidence may be admissible to prove
>
> > (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial, in other words, where

there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other.

*Commonwealth v. Lark*, 518 Pa. 290, 543 A.2d 491, 497 (1988) (citation omitted). Our Supreme Court "has also recognized the res gestae exception, permitting the admission of evidence of other crimes or bad acts to tell 'the complete story.'" *Commonwealth v. Hairston*, 624 Pa. 143, 84 A.3d 657, 665 (2014) (citations omitted).

Nevertheless, "this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." *Lark*, 518 Pa. 290, 543 A.2d at 497. "Unfair prejudice" means a tendency to suggest a decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially. Pa.R.E. 403, comment. Thus, the admission of the evidence "becomes problematic only when its prejudicial effect creates a danger that it will stir such passion in the jury as to sweep them beyond a rational consideration of guilt or innocence of the crime on trial." *Commonwealth v. Sherwood*, 603 Pa. 92, 982 A.2d 483, 496–98 (2009) (quotation marks and quotation omitted).

*Commonwealth v. Gad*, 190 A.3d 600, 603 (Pa.Super. 2018).

In this instant case, Appellant argues that the trial court abused its discretion in allowing the prosecution to admit evidence that Appellant was terminated for utilizing a company truck for personal use and returning it late. Appellant contends that it was unnecessary to introduce evidence of his termination as the prosecution could have shown that Appellant had knowledge of the store and warehouse premises simply by indicating that Appellant was a former employee. Appellant's Brief, at 11. In addition, Appellant claims that the fact that Appellant was terminated does not support the suggestion that he committed burglary. Appellant's Brief, at 12.

Specifically, defense counsel objected to the following testimony by Queen Appliance general manager Soloff:

[Prosecutor:] Briefly, why was [Appellant] terminated?

[Soloff:] For taking a vehicle home without authorization and being unreported. We presumed the vehicle stolen –

[Defense counsel:] I renew my objection here, Your Honor, to testimony about the circumstances of the firing. I just don't think there are any circumstances surrounding that firing or facts that lead to a reasonable nexus between anything that happened with that firing and anything that may fall into a 404(b) objection.

[Trial court:] I am going to sustain the objection for that purpose. But it would be relevant that he would know how to operate the vehicle. You talked about there is specialized knowledge that someone would have to have in order to operate that vehicle, et cetera. And so as an employee, he would have familiarity, et cetera, et cetera. All of that is very relevant.

[Defense counsel:] Understood.

[Trial court:] In terms of the basis for the termination, I tend to agree that it is not relevant. Although it is not going to be – even if I admitted it, it is not highly prejudicial because the decision will be based on the evidence that establishes that it was this defendant that committed these crimes on July 15th.

[Defense counsel:] Ok. Understood.

[Prosecutor:] Thank you, Your Honor.

[Prosecutor to Soloff:] Is it fair to say that [Appellant] was asked to leave the company; he didn't leave of his own volition?

[Soloff:] He was asked to leave the company, and we documented that interaction.

N.T., 7/9/19, at 68-69. We note that the trial court sustained defense counsel's objection with regard to the reasons for Appellant's termination.

Defense counsel objected on another occasion on redirect examination when the prosecutor attempted to develop Soloff's testimony that had been elicited by defense counsel on cross-examination that Soloff had suspected that a former Queen Appliance employee, DeAndre McKinley had been involved in the burglaries.

> [Soloff:]  So prior to [Appellant's] termination, that Saturday, which was the incident that led up to the termination, DeAndre McKinley showed up to work.  He had DeAndre on that truck.  He had worked for us prior.  But he showed up unrequested, to my knowledge, to help [Appellant] on the truck.
>
> And it seemed as if [Appellant] was advocating for us to bring DeAndre back.  So the morning of the incident, we had an assistant manager on duty – not full-time duty, because it is a long job.  They sometimes help in the morning, help themselves, the guys load out.
>
> The assistant manager wasn't as familiar with the scheduling –
>
> [Defense counsel:]  Your Honor, I guess I am going to renew my objection about the 404(b) stuff with this.  I understand the position of the Commonwealth; because this DeAndre was brought up, that would permit this testimony.  But the reason for which DeAndre was brought up was very specific; his identifying DeAndre as a suspect.
>
> This gets into the whole reason for which [Appellant] was fired.  And again, I don't see how that has anything to do with motive, intent, knowledge, or any other exception.
>
> [Trial court:]  Common to the scheme or absence of mistake?
>
> [Prosecutor:]  Well, I can try to limit it.
>
> [Trial court:]  Why don't you direct this examination then.
>
> [Soloff:]  Sorry.
>
> [Trial court:]  But you did bring up McKinley –

[Defense counsel:]  I understand.

[Trial court:]  So I think some latitude is fair.

[Prosecutor:]  Mr. Soloff, DeAndre McKinley was a prior employee, correct?

[Soloff:]  Correct.

[Prosecutor:]  He was terminated; is that correct?

[Soloff:]  Correct.

[Prosecutor:]  And there was no contact with Mr. McKinley until [Appellant] brought him to work with him unbeknownst to anyone else, right?

[Soloff:]  That's my understanding.

[Prosecutor:]  That happened the Saturday before?

[Soloff:]  The Saturday – I think it was the 7th, a week prior to the incident.

[Prosecutor:]  July 7th?

[Soloff:]  Yes.

[Prosecutor:]  Was that a part of the reason why you raised him as a suspect for someone to look into?

[Soloff:]  Yes.

[Prosecutor:]  Because he was brought on by [Appellant] the week prior?

[Soloff:]  He was brought on by [Appellant], and there was a lot of untracked time and behavior that Saturday that occurred with both of them involved.  So I thought he was someone worth questioning to ask about the incident, whether it be to corroborate if he knew anything about [Appellant] or the incident itself.  It was simply a suggestion of somebody that had recently been engaged

with [Appellant] in a suspicious manner for our, you know, company.

N.T., 7/9/19, at 117-19. The trial court indicated that he allowed Soloff's testimony regarding his suspicions about McKinley's involvement in the burglary because defense counsel had opened the door to this line of questioning on cross-examination.

When reviewing the record, we agree that evidence of Appellant's employment with and subsequent termination from Queen Appliance was relevant evidence for permissible purposes other than to show bad character. Appellant's employment as a Queen Appliance delivery driver showed that he had knowledge of specific information on how to access the keys to the work truck and warehouse and was trained to drive the work truck that was stolen in the burglary. Evidence of Appellant's termination was relevant to show his motive and opportunity to commit the crimes at issue given Appellant and McKinley's suspicious behavior that led to Appellant's termination, which occurred days before the burglary of the Queen Appliance store and warehouse.

In addition, evidence of Appellant's termination was admissible under the *res gestae* exception to tell the complete story of the history of the case and the natural development of the facts. The trial court is not "required to sanitize the trial to eliminate all unpleasant facts … where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged." **Hairston**, 624 Pa. at 159, 84 A.3d at 666 (quotation omitted).

- 11 -

Moreover, while not discussed by Appellant, we find that the probative value of the evidence outweighs its potential for unfair prejudice. ***Gad***, ***supra***. Accordingly, we conclude that the trial court did not abuse its discretion in admitting this evidence.

Second, Appellant argues that the trial court's restitution order is illegal because Queen Appliance, a business entity, did not qualify as an enumerated "victim" under Pennsylvania's restitution statute (18 Pa.C.S.A. § 1106) that was in effect at the time of the offenses at issue.

In reviewing a challenge to the trial court's order of restitution, we are guided by the following principles:

> We note that "[i]n the context of criminal proceedings, an order of 'restitution is not simply an award of damages, but, rather, a sentence.'" ***Commonwealth v. Atanasio***, 997 A.2d 1181, 1182-83 (Pa.Super. 2010) (quoting ***Commonwealth v. C.L.***, 963 A.2d 489, 494 (Pa.Super. 2008)). As such, "[a]n appeal from an order of restitution based upon a claim that a restitution order is unsupported by the record challenges the legality, rather than the discretionary aspects, of sentencing." ***Id.*** at 1183 (citing ***Commonwealth v. Redman***, 864 A.2d 566, 569 (Pa.Super. 2004)). Accordingly, "'the determination as to whether the trial court imposed an illegal sentence is a question of law; our standard of review in cases dealing with questions of law is plenary.'" ***Id.*** (quoting ***Commonwealth v. Hughes***, 986 A.2d 159, 160 (Pa.Super. 2009)). This case will also necessarily call upon us to engage in statutory construction, which similarly presents a pure question of law and also implicates the legality of Appellant's sentence. ***Commonwealth v. Shiffler***, 583 Pa. 478, 879 A.2d 185, 189 (2005) (citing ***Commonwealth v. Bradley***, 575 Pa. 141, 834 A.2d 1127, 1131 (2003)). Thus, our standard of review is *de novo* and our scope of review is plenary.

***Commonwealth v. Hunt***, 220 A.3d 582, 585 (Pa.Super. 2019).

Section 1106 of the Crimes Code authorizes a trial court to require an offender to make restitution as a part of his direct sentence. At the time Appellant committed his crimes, Section 1106 provided in relevant part:

**(a) General rule.**—Upon conviction for any crime wherein property has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime ... the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor.

**(c) Mandatory restitution.**—

(1) The court shall order full restitution:

(i) Regardless of the current financial resources of the defendant, so as to provide the victim with the fullest compensation for the loss. ...

**(h) Definitions**. – As used in this section, the following words and phrases shall have the meanings given to them in this subsection:
…
**"Victim."** As defined in section 479.1 of the act of April 9, 1929 (P.L. 177, No. 175), known as The Administrative Code of 1929. The term includes the Crime Victim's Compensation Fund to the victim and any insurance company that has compensated the victim for loss under an insurance contract.

18 Pa.C.S.A. § 1106 (effective January 31, 2005 to October 23, 2018).[1]

---

[1] Section 1106 was amended and became effective on October 24, 2018, after Appellant was sentenced in this case. However, this Court has recently held that the amendments to Section 1106 may not be applied retroactively. *Hunt*, 220 A.3d at 586 ("[w]e decline to give retroactive effect to the October 24, 2018 amendments to § 1106"). *See* 1 Pa.C.S.A. § 1926 ("No statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly").

As Appellant committed the charged criminal conduct on July 15, 2018, before the effective date of the Section 1106 amendments, we are constrained to apply the pre-amended version of Section 1106 in this case.

This Court has explained that "the definition of 'victim' set forth in the Administrative Code of 1929 was itself repealed in 1998, and the operative definition of the term 'victim' under the Crime Victims Act ('CVA') at 18 P.S. § 11.103 took its place." *Hunt*, 220 A.3d at 588-89. The CVA defines the term "victim" to include a "direct victim," "parent or legal guardian," "minor child," or "family member of a homicide victim." 18 P.S. § 11.103. The CVA further defines the term "direct victim" as "[a]n individual against whom a crime has been committed or attempted and who as a direct result of the criminal act or attempt suffers physical or mental injury, death or the loss of earnings under this act." *Id*.

Further, this Court specifically held that "the definition of 'direct victim' under the CVA (and, consequently, the definition of 'victim' under the pre-amendment version of § 1106) does not include corporate entities. *Hunt*, 220 A.3d at 588-89 (finding trial court did not have statutory authority under the pre-amendment version of Section 1106 to order Appellant to make restitution to Rite-Aid and Walgreens).

Based on this precedent, we are constrained to hold that it was illegal for the trial court to order Appellant as part of its direct sentence to make restitution to Queen Appliance, a business entity, under the pre-amended version of Section 1106 in effect at the time that Appellant committed his

criminal conduct. As such, we vacate the restitution portion of Appellant's sentence and remand for resentencing.[2]

Judgment of sentence vacated. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/11/21

_____

[2] While the trial court is not authorized to include mandatory restitution as a part of Appellant's direct sentence under Section 1106, we note that a possible alternative would be to impose restitution as a condition of probation under 42 Pa.C.S.A. § 9754. **Commonwealth v. Weir**, 201 A.3d 163, 170 (Pa.Super. 2018). This Court has recognized that "[r]estitution may also be imposed as a condition of probation and, under such circumstances, the courts are traditionally and properly vested with a broader measure of discretion in fashioning conditions of probation appropriate to the circumstances of the individual case." **Commonwealth v. Harner**, 533 Pa. 14, 21, 617 A.2d 702, 706 (1992).